# EXHIBIT A



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 19090900**
**Date Processed: 12/13/2018**

| | |
|---|---|
| **Primary Contact:** | Sheila L. Williams<br>The Sherwin-Williams Company<br>101 Prospect Avenue, N.W.<br>Cleveland, OH 44115-1075 |

| | |
|---|---|
| **Entity:** | The Sherwin-Williams Company<br>Entity ID Number  2470034 |
| **Entity Served:** | The Sherwin-Williams Company |
| **Title of Action:** | People of the State of California ex rel South Coast Air Quality Management District vs. The Sherman-Williams Company |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Environmental |
| **Court/Agency:** | Los Angeles County Superior Court, CA |
| **Case/Reference No:** | 18PSCV00136 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 12/12/2018 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | William B. Wong<br>909-396-3535 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:** THE SHERWIN-WILLIAMS COMPANY, a
*(AVISO AL DEMANDADO):* an Ohio Corporation,   and DOES 1
through 50, Inclusive

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 30 2018

Sherri R. Carter, Executive Officer/Clerk
By: Candice S. Calagna, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PEOPLE OF THE STATE OF CALIFORNIA, ex rel SOUTH COAST
AIR QUALITY MANAGEMENT DISTRICT, a Public Entity

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: | **CASE NUMBER:** (Número del Caso):
*(El nombre y dirección de la corte es):* | **18PSCV00136**

Superior Court of California
400 Civic Center
400 Civic Center
Pomona, CA 91766

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William B. Wong, CA SBN 120354
South Coast Air Quality Management District
21865 Copley Drive
Diamond Bar, CA 91765

DATE: **NOV 3 0 2018**   Clerk, by **CANDICE S. CALAGNA** , Deputy
*(Fecha)*   **SHERRI R. CARTER**   *(Secretario)*   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* The Sherwin-Williams Company
   a Ohio Corporation
   under: [X] CCP 416.10 (corporation)   [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)   [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

CASE ASSIGNED FOR
ALL PURPOSES TO
JUDGE PETER A. HERNANDEZ
DEPT CCP

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions Plus

Code of Civil Procedure §§ 412.20, 465

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>William B. Wong, CA SBN 120354<br>**South Coast Air Quality Management District**<br>21865 Copley Drive<br>Diamond Bar, CA 91765<br><br>TELEPHONE NO.: **(909) 396-2307**   FAX NO.: **(909) 396-2961**<br>ATTORNEY FOR *(Name):* South Coast Air Quality Management District | **FOR COURT USE ONLY**<br><br>**CONFORMED COPY**<br>**ORIGINAL FILED**<br>Superior Court Of California<br>County Of Los Angeles<br><br>**NOV 30 2018**<br><br>Sherri R. Carter, Executive Officer/Clerk<br>By: Candice S. Calagna, Deputy |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 400 Civic Center
MAILING ADDRESS: 400 Civic Center
CITY AND ZIP CODE: Pomona, CA 91766
BRANCH NAME: East Judicial District, Pomona

**CASE NAME:** People v. Sherwin Williams

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: | **8PSCV00136** |

*Items 1-6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400-3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [X] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

**2. This case** [ ] is   [X] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
  a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
  b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve               in other counties, states, or countries, or in a federal court
  c. [ ] Substantial amount of documentary evidence          f. [ ] Substantial postjudgment judicial supervision

**3. Remedies sought** *(check all that apply):* a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [ ] punitive
**4. Number of causes of action** *(specify):* one
**5. This case** [ ] is   [X] is not   a class action suit.
**6. If there are any known related cases, file and serve a notice of related case.** *(You may use form CM-015.)*
Date: 11/30/2018
William B. Wong, CA SBN 120354
_____
(TYPE OR PRINT NAME)                                   ▶ _____
                                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

| | | | Page 1 of 2 |
|---|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Legal<br>Solutions<br>≈ Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

To Plaintiffs and Others Filing First Papers. If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

To Parties in Rule 3.740 Collections Cases. A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

To Parties in Complex Cases. In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
Contract/Warranty Breach—Seller Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case—Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment (*non-domestic relations*)
Sister State Judgment
Administrative Agency Award (*not unpaid taxes*)
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-harassment*)
Mechanics Lien
Other Commercial Complaint Case (*non-tort/non-complex*)
Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief from Late Claim
Other Civil Petition

| SHORT TITLE: People v. Sherwin Williams | CASE NUMBER: |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND 18PSCV00136
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 1, 11 |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice – Physicians & Surgeons | 1, 4, 11 |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.3
Page 1 of 4

LA-CV109

13

| SHORT TITLE People v. Sherwin Williams | | CASE NUMBER |

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | | |
| Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | | |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | | |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation   Number of parcels _____ | 2, 6 |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | ☐ A6032  Quiet Title | 2, 6 |
| | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

SHORT TITLE: People v. Sherwin Williams | CASE NUMBER:

| | A. Sub-class Civil Case Cover Sheet Category No. | B. Type of Action (Check only one) | C. Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160 Abstract of Judgment | 2, 6 |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☒ A6000 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 ⑨ |
| | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2, 8 |
| **Miscellaneous Civil Petitions** | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment | 2, 3, 9 |
| | | ☐ A6123 Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190 Election Contest | 2 |
| | | ☐ A6110 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100 Other Civil Petition | 2, 9 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3.
Page 3 of 4

15

| SHORT TITLE: People v. Sherwin Williams | CASE NUMBER |
|---|---|

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases.)

| REASON: ☐1.☐2.☐3.☐4.☐5.☐6.☐7.☐8.☒9.☐10.☐11. | ADDRESS: South Coast Air Quality Management District 21865 Copley Drive Diamond Bar, CA 91765 |
|---|---|
| CITY: Diamond Bar | STATE: CA | ZIP CODE: 91765 |

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the **East Judicial** District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated:  __11/30/2018__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

16

1    OFFICE OF THE GENERAL COUNSEL
     SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT
2    WILLIAM B. WONG, SBN 120354
     PRINCIPAL DEPUTY DISTRICT COUNSEL
3    21865 Copley Drive
     Diamond Bar, California 91765
4    TEL: 909-396-3535 • FAX: 909-396-2961

5    Attorney for Plaintiff
     People of the State of California

6

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County Of Los Angeles

NOV 30 2018

Sherri R. Carter, Executive Officer/Clerk
By: Candice S. Calagna, Deputy

7            **SUPERIOR COURT OF CALIFORNIA**

8      **COUNTY OF LOS ANGELES, EAST JUDICIAL DISTRICT**

9

10    PEOPLE   OF   THE   STATE   OF
     CALIFORNIA, *ex rel* SOUTH COAST AIR
11    QUALITY MANAGEMENT DISTRICT, a
     Public Entity,
12                Plaintiff,
13       vs.

14    THE SHERWIN-WILLIAMS COMPANY, a
     an Ohio Corporation,  and DOES 1 through
15    50, Inclusive,

16             Defendant.

CASE NO. **18PSCV00136**

**COMPLAINT FOR CIVIL PENALTIES**

District Rules 1113, 1168, 1143;
Health and Safety Code §§ 42402, 42402.1(a),
42402.2(a), and 42402.3(a)

**NO FEE PER GOV. CODE**
**SECTION 6103**

**DEMAND: $30,000,000**

*(Filing Fees Exempt, Per Gov't Code § 6103)*

17

18

19

20

**CASE ASSIGNED FOR
ALL PURPOSES TO
JUDGE PETER A. HERNANDEZ
DEPT. P**

20       The People of the State of California, on the relation of the SOUTH COAST AIR

21   QUALITY MANAGEMENT DISTRICT, seek to recover civil penalties from defendants,

22   demand verified answers pursuant to California Code of Civil Procedure §446(a), and allege as

23   follows:

24                  **COMMON ALLEGATIONS**

25      1.     At all times herein mentioned, plaintiff SOUTH COAST AIR QUALITY

26   MANAGEMENT DISTRICT (hereinafter referred to as "DISTRICT"), was and is organized and

27   existing pursuant to Division 26, Part 3, Chapter 5.5 of the California Health and Safety Code.

28

—————————————————————————————————————

                 COMPLAINT FOR CIVIL PENALTIES

2.      The District is responsible for regulating non-vehicular air pollution and emissions in those portions of the Counties of Los Angeles, Orange, Riverside, and San Bernardino included in the South Coast Air Basin, as described in California Health and Safety Code (hereafter "Health and Safety Code") section 40410 and Title 17 of the California Code of Regulations section 60104 ("the Basin").

3.      Pursuant to Health and Safety Code section 41513, the DISTRICT may bring a civil action in the name of the People of the State of California to enjoin any violation of DISTRICT rules.  In addition, under Health and Safety Code section 42403, the DISTRICT may bring a civil suit in the name of the People for civil penalties under Health and Safety Code, Division 26, Part 4, sections 42402, 42402.1, 42402.2, and 42402.3(a) for violation of DISTRICT rules.

4.      Defendant The Sherwin-Williams Company ("Sherwin Williams") is a 15 billion dollar Ohio corporation which, directly or through affiliates and other entities, does or did business in its own capacity in the Basin (collectively referred to as "Facilities").  From its Facilities and other locations that did business within and/or serviced the Basin, Sherwin Williams supplied, offered for sale, and sold architectural coatings, adhesives or sealants, and consumer multi-purpose solvents or paint thinners containing excessive Volatile Organic Compounds (hereafter "VOCs") to individuals, businesses and other entities located in the Basin.

5.      Sherwin Williams is a "person" as defined in Health and Safety Code section 39047 and all applicable District rules.

6.      Sherwin Williams is, and at all times relevant to the claims in this Complaint, was responsible for compliance with the provisions of DISTRICT Rules 1113, 1168, 314, and 1143, as well as Health and Safety Code, Division 26, Part 4, sections 42402, 42402.1(a), 42402.2(a), and 42402.3(a).

7.      In this Complaint when reference is made to any act or omission of Sherwin Williams, such allegations shall include the acts and omissions of owners, officers, directors, agents, employees, contractors, vendors, affiliates, and/or representatives of Sherwin Williams

-2-
COMPLAINT FOR CIVIL PENALTIES

1  while acting within the course and scope of their employment or agency on behalf of Sherwin

2  Williams.

3      8.      The identities of DOES 1-50 are unknown to Plaintiff at this time.  At such time as

4  the identities of DOE defendants become known, Plaintiff will amend this Complaint accordingly.

5  DOES 1-50 are, and at all times relevant to the claims in this Complaint were, legally responsible

6  for compliance with DISTRICT Rules 1113, 1168, 314, and 1143, as well as the provisions of

7  Health and Safety Code, Division 26, Part 4, sections 42402, 42402.1(a), 42402.2(a), 42402.3(a).

8      9.      At all times relevant hereto, DOES 1-25 were in a position of responsibility

9  allowing them to influence corporate policies or activities with respect to Sherwin Williams'

10  compliance with California environmental laws and regulations at its Facilities and in the conduct

11  of its business in the State of California, and had, by reason of their position in the corporation,

12  responsibility and authority either to prevent in the first instance, or promptly correct, the

13  violations complained of herein, but failed to do so.  In addition to any direct personal liability of

14  these individuals, DOES 1-25 also are personally liable under the "responsible corporate officer

15  doctrine" for violations of law committed by Sherwin Williams as alleged herein.

16                          **JURISDICTION AND VENUE**

17      10.      Venue is proper in this County pursuant to Health and Safety Code section 42403,

18  in that violations alleged in this Complaint occurred in the County of Los Angeles and throughout

19  the Basin.  The Court has jurisdiction pursuant to Article 6; section 10 of the California

20  Constitution and section 393 of the Code of Civil Procedure.

21                   **STATUTORY AND REGULATORY BACKGROUND**

22      11.      The State of California ("State") has enacted a comprehensive statutory and

23  regulatory framework designed to control air pollution and protect ambient air quality in the State.

24  This framework is contained in Division 26 of the Health and Safety Code and the rules,

25  regulations, orders and permits adopted pursuant thereto by the State Board and by air pollution

26  control districts ("APCDs"); Title 17 of the California Code of Regulations, Division 3; Title 13

27  of the California Code of Regulations, Division 3; and other miscellaneous provisions of law

28  related to the control of air pollution in the State.

-3-

COMPLAINT FOR CIVIL PENALTIES

12.     Pursuant to Health and Safety Code section 40000, local and regional APCDs are responsible for controlling air pollution from all sources within their jurisdiction, other than emissions from motor vehicles which are regulated by the State Board.

13.     Pursuant to Health and Safety Code section 40001(a), APCDs are required to adopt and enforce rules and regulations to achieve and maintain State and Federal ambient air quality standards in all areas affected by emissions sources under their jurisdiction.

14.     As set forth in paragraphs 1 and 2 above, the DISTRICT is a state-created APCD.

15.     Pursuant to California Health and Safety Code section 40001(a), the DISTRICT has adopted the Rules and Regulations of the South Coast Air Quality Management District ("RULES"), including Rules 1113, 1168, 314, and 1143 relating to architectural coatings, consumer multi-purpose solvents and paint thinners, adhesives and sealants and their primers.

16.     Collectively, architectural coatings, consumer paint thinners, consumer multi-purpose solvents, adhesives and sealants and their primers, constitute one of the largest non-mobile sources of VOC emissions in the Basin. The DISTRICT estimates that these sources generate approximately 11 tons per day of VOC emissions.

17.     Rule 1113 regulates architectural coatings, which contain VOCs, which change from liquid to gas when exposed to air.  Architectural coatings are any coatings applied to stationary structures and their appurtenances.  They include, but are not limited to, primers, paints, sealers, shellacs, wood coatings, preservatives,  lacquers, varnishes, stains, roof coatings, and finishes that have traditionally been applied to the interior and exterior of buildings, including but not limited to, hand railings, cabinets, bathroom and kitchen fixtures, swimming pools, roofs, fences, rain-gutters and down-spouts, window screens, lamp-posts, heating and air conditioning equipment, other mechanical equipment, large fixed stationary tools, signs, motion picture and television production sets, concrete forms,  mobile homes, pavements, or curbs. Rule 1113 was first adopted in 1977, shortly after the DISTRICT was formed. DISTRICT Rule 1113 was adopted for the purpose of reducing VOC emissions in the Basin. A true and correct copy of Rule 1113 is attached as Exhibit A and incorporated herein.

-4-

18.     Rule 1143 regulates consumer paint thinners and multi-purpose solvents, which also contain VOCs that are emitted into the air.  Consumer paint thinners are generally liquid products used to reduce the viscosity of coatings.   Consumer multi-purpose solvents are generally liquid products used for dispersing organic materials.  Rule 1143 was first adopted in 2009 also for the purpose of reducing VOC emissions in the Basin.  A true and correct copy of Rule 1143 is attached as Exhibit B and incorporated herein.

19.     Rule 1168 regulates adhesives, sealants and their primers, which also contain VOCs that are emitted into the air.  Adhesives are generally substances used to bond one surface to another.  Sealants are generally materials with adhesive properties use to fill gaps between two surfaces.  Rule 1168 was first adopted in 1989 also for the purpose of limiting VOC emissions in the Basin.  A true and correct copy of Rule 1168 is attached as Exhibit C and incorporated herein.

20.     VOC emissions contribute to the formation of ozone and particulate matter, two pollutants regulated by State and Federal ambient air quality standards.  The Clean Air Act requires the United States Environmental Protection Agency (hereafter "USEPA") to set air quality standards to protect both public health and the public welfare (e.g. crops and vegetation).  Ozone and particulate matter both exceed the State and National ambient air quality standards in the Basin.  They are one of the Basin's most serious regional air quality problems and among the most difficult pollutants to reduce to healthful levels.

21.     VOCs react photochemically with oxides of nitrogen (NOx) to form ozone.  Ozone is a strong oxidizer that irritates the human respiratory system and damages plant life. VOCs also react in the atmosphere to form particulate matter, a pollutant which adversely affects human health and limits visibility.  Since these small particulates penetrate into the deepest regions of the lungs, they affect pulmonary function and have been linked to increased deaths.  Several health related studies show a significant increase in hospital emergency room visits during warm and smoggy days.  Research shows this increase is a direct result of higher ozone and particulate matter concentrations.

22.     Pursuant to Rule 1113(c)(1), a person shall not supply, sell, or offer for sale any architectural coating listed in the Table of Standards that contains VOCs in excess of the specified VOC limit, after the effective date stated in the Table.

23.     Pursuant to Rule 1143(d)(1), a person shall not supply, sell, or offer for sale any consumer paint thinner or multi-purpose solvent that contains VOCs in excess of the specified VOC limit listed in the Table of Standards, after the effective date stated in the Table.

24.     Pursuant to Rule 1168(c)(1), a person shall not supply, sell, or offer for sale any adhesive or sealant or their primers listed in the Table of Standards that contains VOCs in excess of the specified VOC limit, after the effective date stated in the Table.

## GENERAL ALLEGATIONS

25.     On March 18, 2015, Defendant was served with Notice of Violation (NOV) P61803 for exceeding the applicable VOC limits specified in Rule 1113.  A true copy of NOV P61803 is attached hereto as Exhibit D.

26.     On May 20, 2015, Defendant was served with Notice of Violation (NOV) P55313 for exceeding the applicable VOC limits specified in Rule 1168.  A true copy of NOV P55313 is attached hereto as Exhibit E.

27.     On June 16, 2016, Defendant was served with Notice of Violation (NOV) P64805 for again exceeding the applicable VOC limits specified in Rule 1113. A true copy of NOV P64805 is attached hereto as Exhibit F.

28.     On September 9, 2016, Defendant was served with Notice of Violation (NOV) P64808 for exceeding the applicable VOC limits specified in Rule 1143. A true copy of NOV P64808 is attached hereto as Exhibit G.

29.     At all times relevant to this Complaint, Defendants offered for sale and/or sold and/or supplied within the Basin architectural coatings, adhesives, sealants, consumer multi-purpose solvents and/or paint thinners containing VOCs in excess of regulatory limits.

30.     The DISTRICT is continuing its investigation into the matters alleged herein and will move to amend the Complaint as may be warranted by the discovery of additional information.

-6-

31.     Plaintiff is informed and believes, pursuant to Health & Safety Code section 42404.5 that all violations alleged and expected to be proven are within the relevant statute of limitations.  As a precaution, however, Plaintiff and Sherwin Williams have entered into an agreement to toll any applicable statutes of limitations, and any and all days covered by that agreement will not be included in computing the time limited by any statutes of limitation applicable to the causes of action and violations alleged against Sherwin Williams.

### FIRST CAUSE OF ACTION

### VIOLATION OF DISTRICT RULE 1113 (SALE)

### STRICT LIABILITY – HEALTH & SAFETY CODE SECTION 42402

32.     Plaintiff realleges paragraphs 1 through 32, inclusive.

33.     District Rule 1113(c)(1) prohibits the sale of architectural coatings containing VOCs in excess of specified limits.

34.     Health and Safety Code section 42402 et seq prohibits any person from violating any rule, regulation, permit or order of an air district, including a district hearing board, including South Coast Air Quality Management District Rule 1113.

35.     Plaintiff is informed and believes that within the three years preceding the date of discovery of violations and continuing thereafter, Defendants, and each of them, have sold for use within the Basin architectural coatings containing excessive VOCs in violation of District Rule 1113.

36.     Each container of coating sold containing excessive VOCs in violation of District Rule 1113 is a separate violation.  Each day during any portion of which Defendants, and each of them, violated Rule 1113 is a separate violation.

### SECOND CAUSE OF ACTION

### VIOLATION OF RULE 1113 –EMISSION OF AN AIR CONTAMINANT AND

### KNOWING FAILURE TO TAKE CORRECTIVE ACTION

### HEALTH & SAFETY CODE §42402.2(a)

37.     Plaintiff realleges paragraphs 1 through 32, and 34, inclusive.

-7-

COMPLAINT FOR CIVIL PENALTIES

38.     Health and Safety Code section 42402.2(a) prohibits the emission of an air contaminant in violation of Part 4 of Division 26 or any rule, regulation, permit, or order of the State Board or of a District pertaining to emission regulations or limitations and, knowing of the emission, fails to take corrective action within a reasonable period of time under the circumstances.

39.     Plaintiff is informed and believes that that within the three years preceding the date of discovery of violations and continuing thereafter, Defendants, and each of them, emitted air contaminants by selling architectural coatings containing excessive VOCs to customers in violation of Rule 1113, knowing that the customers would open and use those non-compliant products within the Basin.  Moreover, Defendants, and each of them, knew of these emissions and knowingly failed to take corrective action within a reasonable period of time.

40.     Each container of coating sold containing excessive VOCs in violation of District Rule 1113 is a separate violation.  Each day during any portion of which Defendants, and each of them, violated Rule 1113 is a separate violation.

### THIRD CAUSE OF ACTION

### VIOLATION OF RULE 1113 – NEGLIGENT EMISSION OF AN AIR CONTAMINANT

### HEALTH & SAFETY CODE §42402.1(a)

41.     Plaintiff realleges paragraphs 1 through 32, and 34, inclusive.

42.     Health and Safety Code section 42402.1(a) prohibits the negligent emission of an air contaminant in violation of Part 4 of Division 26 or any rule, regulation, permit, or order of the State Board, or of a District pertaining to emission regulations or limitations.

43.     Plaintiff is informed and believes that that within the three years preceding the date of discovery of violations and continuing thereafter, Defendants, and each of them, have negligently emitted air contaminants by selling architectural coatings containing excessive VOCs to customers in violation of Rule 1113, knowing that the customers would open and use those non-compliant products within the Basin.

-8-

COMPLAINT FOR CIVIL PENALTIES

1   44.   Each container of coating sold containing excessive VOCs in violation of District

2   Rule 1113 is a separate violation. Each day during any portion of which Defendants, and each of

3   them, violated Rule 1113 is a separate violation.

4                           **FOURTH CAUSE OF ACTION**

5          **VIOLATION OF DISTRICT RULE 1113 (OFFERING FOR SALE)**

6                **STRICT LIABILITY -- HEALTH & SAFETY CODE §42402**

7   45.   Plaintiff realleges paragraphs 1 through 32, inclusive.

8   46.   District Rule 1113(c)(1) prohibits the offering for sale of architectural coatings

9   containing VOCs in excess of specified limits.

10   47.   Health and Safety Code section 42402 et seq prohibits any person from violating

11   any rule, regulation, permit or order of an air district, including a district hearing board, including

12   South Coast Air Quality Management District Rule 1113.

13   48.   Plaintiff is informed and believes that that within the three years preceding the date

14   of discovery of violations and continuing thereafter, Defendants, and each of them, have offered

15   for sale for use within the Basin architectural coatings containing excessive VOCs in violation of

16   District Rule 1113.

17   49.   Each container of coating offered to be sold containing excessive VOCs in

18   violation of District Rule 1113 is a separate violation. Each day during any portion of which

19   Defendants, and each of them, violated Rule 1113 is a separate violation.

20                            **FIFTH CAUSE OF ACTION**

21          **VIOLATION OF DISTRICT RULE 1168 – STRICT LIABILITY**

22                     **HEALTH & SAFETY CODE §42402**

23   50.   Plaintiff realleges paragraphs 1 through 32, inclusive.

24   51.   District Rule 1168(c)(1) prohibits the sale, distribution, or offering of sale of

25   adhesives, or sealants containing VOCs in excess of their specified limits.

26   52.   Health and Safety Code section 42402 et seq prohibits any person from violating

27   any rule, regulation, permit or order of an air district, including a district hearing board, including

28   South Coast Air Quality Management District Rule 1168.

-9-

COMPLAINT FOR CIVIL PENALTIES

53.     Plaintiff is informed and believes, and based thereon alleges, that Defendants, and each of them, offered for sale or sold an adhesive and sealant for use that exceeded the applicable VOC limits so as to be in violation of District Rule 1168.

54.     Each container of adhesive or sealant sold or offered to be sold containing excessive VOCs in violation of District Rule 1168 is a separate violation.  Each day during any portion of which Defendants, and each of them, violated Rule 1168 is a separate violation.

## SIXTH CAUSE OF ACTION

## VIOLATION OF RULE 1143 – NEGLIGENT EMISSION OF AN AIR CONTAMINANT

## HEALTH & SAFETY CODE §42402.1(a)

55.     Plaintiff realleges paragraphs 1 through 32, inclusive.

56.     District Rule 1143 prohibits the sale, supply, or offering of sale of consumer multi-purpose solvents or paint thinners containing VOCs in excess of their specified limits.

57.     Health and Safety Code section 42402 et seq., prohibits any person from violating any rule, regulation, permit or order of an air district, including a district hearing board, including South Coast Air Quality Management District Rule 1143.

58.     Plaintiff is informed and believes, and based thereon alleges, that beginning on and about January 1, 2015, Defendants, and each of them, sold a multi-purpose solvent that exceeded the applicable VOC limits so as to be in violation of District Rule 1143, knowing that the customers would open and use those non-compliant products within the Basin.  Moreover, Defendants, and each of them, knew of these emissions and knowingly failed to take corrective action within a reasonable period of time.

59.     Each container of multi-purpose solvent or paint thinner sold containing excessive VOCs in violation of District Rule 1143 is a separate violation.  Each day during any portion of which Defendants, and each of them, violated Rule 1143 is a separate violation.

//
//
//
//

-10-

# SEVENTH CAUSE OF ACTION

## VIOLATION OF RULE 1143 – WILLFUL AND INTENTIONAL EMISSION

## OF AN AIR CONTAMINANT

### HEALTH & SAFETY CODE §42402.3(a)

60.     Plaintiff realleges paragraphs 1 through 32, and 56-60, inclusive.

61.     Plaintiff alleges that Defendants, and each of them, were placed on prior notice that sales of the multi-purpose solvent or paint thinner in the Basin exceeded VOC limits in Rule 1143, and despite that notice, Defendants and each of them continued to willfully sell the illegal product in the Basin, knowing that the customers would open and use those non-compliant products within the Basin and thereby intentionally caused these excess emissions.

62.     Each container of multi-purpose solvent or paint thinner sold containing excessive VOCs in violation of District Rule 1143 is a separate violation.  Each day during any portion of which Defendants, and each of them, violated Rule 1143 is a separate violation.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief as to each Defendant:

## ON PLAINTIFF'S FIRST, FOURTH, FIFTH CAUSES OF ACTION

1.     For civil penalties as prescribed in California Health and Safety Code section 42402 in the amount of Ten Thousand Dollars ($10,000) per violation for each and every day of violation, in an amount according to proof;

## ON PLAINTIFF'S SECOND CAUSE OF ACTION

2.     For civil penalties as prescribed in California Health and Safety Code section 42402.2 in the amount of Forty Thousand Dollars ($40,000) per violation for each and every day of knowing violation without corrective action in an amount according to proof;

## ON PLAINTIFF'S THIRD AND SIXTH CAUSE OF ACTION

3.     For civil penalties as prescribed in California Health and Safety Code section 42402.1 in the amount of Twenty-Five Thousand Dollars ($25,000) per violation for each and every day of negligent violation in an amount according to proof;

//

-11-

1

## ON PLAINTIFF'S SEVENTH CAUSE OF ACTION

2      4.     For civil penalties as prescribed in California Health and Safety Code section

3 42402.3 in the amount of Seventy-Five Thousand Dollars ($75,000) per violation for each and

4 every day of willful and intentional violation in an amount according to proof

## ON ALL CAUSES OF ACTION

6      4.     A preliminary and permanent injunction, issued pursuant to Health and Safety

7 Code section 41513, requiring Defendants, and each of them, to comply with those provisions of

8 Health and Safety Code, Division 26, Part 4 and implementing rules and regulations, which

9 Defendants, and each of them, are alleged to have violated.

10      5.     For costs of suit incurred herein including, but not limited to, Plaintiff's costs of

11 inspection, investigation, attorneys' fees, enforcement, prosecution, and suit herein; and

12      6.     For such other and further relief as the Court deems just and proper.

13

14

DATED: November 30, 2018           SOUTH COAST AIR QUALITY
15                                        MANAGEMENT DISTRICT

16

17                     By:

18                               WILLIAM B. WONG
                                Principal Deputy District Counsel

19

20

21

22

23

24

25

26

27

28

(Adopted Sept. 2, 1977)(Amended Dec. 2, 1977)(Amended Feb. 3, 1978)
(Amended Sept. 5, 1980)(Amended Apr. 3, 1981)(Amended July 3, 1981)
(Amended by California Air Resources Board Oct. 21, 1981)
(Amended Aug. 5, 1983)(Amended Mar. 16, 1984)(Amended Aug. 2, 1985)
(Amended Nov. 1, 1985)(Amended Feb. 6, 1987)(Amended Jan. 5, 1990)
(Amended Feb. 2, 1990)(Amended Nov. 2, 1990)(Amended Dec. 7, 1990)
(Amended Sept. 6, 1991)(Amended March 8, 1996)(Amended August 9, 1996)
(Amended November 8, 1996)(Amended May 14, 1999; Vacated)
(Amended July 20, 2001)(Amended December 6, 2002)(Amended December 5, 2003)
(Amended July 9, 2004)(Amended June 9, 2006)(Amended July 13, 2007)
(Amended June 3, 2011)(Amended September 6, 2013)
(Amended February 5, 2016)

## RULE 1113.  ARCHITECTURAL COATINGS

(a)     Applicability

This rule is applicable to any person who supplies, sells, markets, offers for sale, or manufactures any architectural coating that is intended to be field applied within the District to stationary structures or their appurtenances, and to fields and lawns; as well as any person who applies, stores at a worksite, or solicits the application of any architectural coating within the District.  The purpose of this rule is to limit the VOC content of architectural coatings used in the District.

(b)     Definitions

For the purpose of this rule, the following definitions shall apply:

(1)     AEROSOL COATING PRODUCT means a pressurized coating product containing pigments, resins, and/or other coatings solids that dispenses product ingredients by means of a propellant, and is packaged in a disposable aerosol container for hand-held application, or for use in specialized equipment for ground marking and traffic marking applications.

(2)     ALUMINUM ROOF COATINGS are roof coatings containing at least 0.7 pounds per gallon (84 grams per liter) of coating as applied, of elemental aluminum pigment.

(3)     APPURTENANCES are accessories to a stationary structure including, but not limited to: hand railings, cabinets, bathroom and kitchen fixtures, fences, rain-gutters and down-spouts, window screens, lamp-posts, heating and air conditioning equipment, other mechanical equipment, large fixed stationary tools, signs, motion picture and television production sets, and concrete forms.

(4)     ARCHITECTURAL COATINGS are any coatings applied to stationary structures or their appurtenances, or to fields and lawns.

1113 – 1

**Rule 1113 (Cont.)** (Amended February 5, 2016)

(5) BELOW-GROUND WOOD PRESERVATIVES are wood preservatives formulated to protect below-ground wood.

(6) BITUMINOUS COATING MATERIALS are black or brownish coating materials, soluble in carbon disulfide, consisting mainly of hydrocarbons and which are obtained from natural deposits, or as residues from the distillation of crude petroleum oils, or of low grades of coal.

(7) BITUMINOUS ROOF PRIMERS are primers formulated for or applied to roofing that incorporate bituminous coating materials.

(8) BOND BREAKERS are coatings formulated for or applied between layers of concrete to prevent the freshly poured top layer of concrete from bonding to the substrate over which it is poured. Bond breakers will be exempt from Rules 1113 and 314 upon adoption of Rule 1161 – Release Agents or any other Regulation XI rule limiting the VOC content of bond breakers.

(9) BUILDING ENVELOPE is the ensemble of exterior and demising partitions of a building that enclose conditioned space.

(10) BUILDING ENVELOPE COATINGS are fluid applied coatings applied to the building envelope to provide a continuous barrier to air or vapor leakage through the building envelope that separates conditioned from unconditioned spaces. Building Envelope Coatings are applied to diverse materials including, but not limited to, concrete masonry units (CMU), oriented stranded board (OSB), gypsum board, and wood substrates and must meet the following performance criteria:

(A) Air Barriers formulated to have an air permeance not exceeding 0.004 cubic feet per minute per square foot under a pressure differential of 1.57 pounds per square foot (0.004 cfm/ft$^2$ @ 1.57 psf), [0.02 liters per square meter per second under a pressure differential of 75 Pa (0.02 L/(s m2) @ 75 Pa)] when tested in accordance with ASTM E2178; and/or

(B) Water Resistive Barriers formulated to resist liquid water that has penetrated a cladding system from further intruding into the exterior wall assembly and is classified as follows:

(i) Passes water resistance testing according to ASTM E331, and

(ii) Water vapor permeance is classified in accordance with ASTM E96/E96M.

(11) COATING is a material which is applied to a surface in order to beautify, protect, or provide a barrier to such surface.

(12) COLORANTS are solutions of dyes or suspensions of pigments.

1113 – 2

**Rule 1113 (Cont.)**                                    **(Amended February 5, 2016)**

(13)    COLOR INDICATING SAFETY COATINGS are industrial maintenance coatings for safety management of process streams to prevent or minimize the consequences of the release of toxic, reactive, flammable or explosive substances, and include chemical and thermal color indicating coatings.

(14)    CONCENTRATES are coatings supplied in a form that must be diluted with water or an exempt compound, prior to application, according to the architectural coatings manufacturer's application instructions in order to yield the desired coating properties.

(15)    CONCRETE-CURING COMPOUNDS are coatings formulated for or applied to freshly poured concrete to retard the evaporation of water. Concrete-curing compounds manufactured and used for roadways and bridges (does not include curbs and gutters, sidewalks, islands, driveways and other miscellaneous concrete areas) are those concrete-curing compounds that meet ASTM Designation C309, Class B, and meet a loss of water standard of less than $0.15\text{-kg/m}^2$ in 24 hours as determined by the California Transportation Department, California Test 534.

(16)    CONCRETE SURFACE RETARDERS are coatings containing one or more ingredients such as extender pigments, primary pigments, resins, and solvents that interact chemically with the cement to prevent hardening on the surface where the retarder is applied, allowing the mix of cement and sand at the surface to be washed away to create an exposed aggregate finish.

(17)    DEFAULT COATINGS are specialty coatings (those other than flat or nonflat coatings) that are not defined in section (b) as any other coating category.

(18)    DRIVEWAY SEALERS are coatings that are applied to worn asphalt driveway surfaces in order to:

(A)    Fill cracks;

(B)    Seal the surface to provide protection; or

(C)    Restore or preserve the surface appearance.

(19)    DRY-FOG COATINGS are coatings which are formulated only for spray application so that when sprayed, overspray droplets dry before falling on floors and other surfaces.

(20)    EXEMPT COMPOUNDS (See Rule 102-Definition of Terms.)

(21)    FAUX FINISHING COATINGS are coatings that meet one or more of the following subcategories:

(A)    CLEAR TOPCOATS are clear coatings used to enhance, seal and protect a Faux Finishing coating that meets the requirements of subsection (b)(21)(B), (C), (D) or (E). These clear topcoats must be sold and used

1113 – 3

Rule 1113 (Cont.)                                    (Amended February 5, 2016)

solely as part of a Faux Finishing or graphic arts coating system, and must be labeled in accordance paragraph (d)(7).

(B)     DECORATIVE COATINGS are coatings used to create a gonioapparent appearance, such as metallic, iridescent, or pearlescent appearance, that contain at least 48 grams of pearlescent mica pigment or other iridescent pigment per liter of coating as applied (at least 0.4 pounds per gallon).

(C)     GLAZES are coatings formulated and recommended to be used (or to be mixed with another coating) for:

(i)      Wet-in-wet techniques, where a wet coating is applied over another wet coating to create artistic effects, including simulated marble or wood grain, or

(ii)     Wet-in-dry techniques, where a wet coating is applied over a pre-painted or a specially prepared substrate or base coat and is either applied or is treated during the drying period with various tools, such as a brush, rag, comb, or sponge to create artistic effects such as dirt, old age, smoke damage, simulated marble and wood grain finishes, decorative patterns, or color blending.

(D)     JAPANS are pure concentrated pigments, finely ground in a slow drying vehicle used by Motion Picture and Television Production Studios to create artistic effects including, but not limited to, dirt, old age, smoke damage, water damage, simulated marble, and wood grain.

(E)     TROWEL APPLIED COATINGS are coatings exclusively applied by trowel that are used to create aesthetic effects including, but not limited to, polished plaster, clay, suede and dimensional, tactile textures.

(22)   FIRE-PROOFING COATINGS are opaque coatings formulated to protect the structural integrity of steel and other construction materials and listed by Underwriter's Laboratories, Inc. for the fire protection of steel.

(23)   FLAT COATINGS are coatings that register a gloss of less than 15 on an 85-degree meter or less than 5 on a 60-degree meter according to ASTM Test Method D 523.

(24)   FLOOR COATINGS are opaque coatings that are formulated for or applied to flooring including, but not limited to, flooring for garages, decks, and porches. Floor coatings also include clear coatings formulated for or applied to concrete flooring. Floor coatings do not include Industrial Maintenance Coatings.

(25)   FORM RELEASE COMPOUNDS are coatings designed for or applied to a concrete form to prevent the freshly poured concrete from bonding to the form.

1113 – 4

**Rule 1113 (Cont.)**                    (Amended February 5, 2016)

The form may consist of metal, wood, or some material other than concrete. Form release compounds will be exempt from Rules 1113 and 314 upon adoption of Rule 1161 – Release Agents or any other Regulation XI Rule limiting the VOC content of form release compounds.

(26)    FORMULATION DATA is the actual product recipe which itemizes all the ingredients contained in a product including VOCs and the quantities thereof used by the manufacturer to create the product. Material Safety Data Sheets (MSDS) are not considered formulation data.

(27)    GONIOAPPARENT means a change in appearance with a change in the angle of illumination or the angle of view, as defined according to ASTM E 284.

(28)    GRAMS OF VOC PER LITER OF COATING OR COLORANT, LESS WATER AND LESS EXEMPT COMPOUNDS, is the weight of VOC per combined volume of VOC and coating or colorant solids and can be calculated by the following equation:

$$\text{Grams of VOC per Liter of Coating, Less Water and Less Exempt Compounds} = \frac{Ws - Ww - Wes}{Vm - Vw - Ves}$$

Where:      $Ws$    =   weight of volatile compounds in grams
            $Ww$    =   weight of water in grams
            $Wes$   =   weight of exempt compounds in grams
            $Vm$    =   volume of material in liters
            $Vw$    =   volume of water in liters
            $Ves$   =   volume of exempt compounds in liters

For coatings that contain reactive diluents, the Grams of VOC per Liter of Coating, Less Water and Less Exempt Compounds, shall be calculated by the following equation:

$$\text{Grams of VOC per Liter of Coating, Less Water and Less Exempt Compounds} = \frac{Ws - Ww - Wes}{Vm - Vw - Ves}$$

Where:      $Ws$    =   weight of volatile compounds emitted during curing, in grams
            $Ww$    =   weight of water emitted during curing, in grams

1113 – 5

Rule 1113 (Cont.)                                    (Amended February 5, 2016)

$$
\begin{aligned}
Wes &= \text{weight of exempt compounds emitted during} \\
&\quad\text{curing, in grams} \\
Vm &= \text{volume of the material prior to reaction, in liters} \\
Vw &= \text{volume of water emitted during curing, in liters} \\
Ves &= \text{volume of exempt compounds emitted during} \\
&\quad\text{curing, in liters}
\end{aligned}
$$

(29)    GRAMS OF VOC PER LITER OF MATERIAL is the weight of VOC per volume of material and can be calculated by the following equation:

$$
\text{Grams of VOC per Liter of Material} = \frac{Ws - Ww - Wes}{Vm}
$$

Where:

$$
\begin{aligned}
Ws &= \text{weight of volatile compounds in grams} \\
Ww &= \text{weight of water in grams} \\
Wes &= \text{weight of exempt compounds in grams} \\
Vm &= \text{volume of the material in liters}
\end{aligned}
$$

(30)    GRAPHIC ARTS COATINGS (Sign Paints) are coatings formulated for hand-application by artists using brush or roller techniques to indoor and outdoor signs (excluding structural components) and murals, including lettering enamels, poster colors, copy blockers, and bulletin enamels.

(31)    HIGH-TEMPERATURE INDUSTRIAL MAINTENANCE COATINGS are industrial maintenance coatings formulated for or applied to substrates exposed continuously or intermittently to temperatures above 400 degrees Fahrenheit.

(32)    INDUSTRIAL MAINTENANCE COATINGS are coatings, including primers, sealers, undercoaters, intermediate coatings and topcoats, formulated for or applied to substrates, including floors, that are exposed to one or more of the following extreme environmental conditions:

(A)    Immersion in water, wastewater, or chemical solutions (aqueous and non-aqueous solutions), or chronic exposure of interior surfaces to moisture condensation;

(B)    Acute or chronic exposure to corrosive, caustic or acidic agents, or similar chemicals, chemical fumes, chemical mixtures, or solutions;

(C)    Repeated exposure to temperatures in excess of 250 degrees Fahrenheit;

(D)    Repeated heavy abrasion, including mechanical wear and repeated scrubbing with industrial solvents, cleaners, or scouring agents; or

1113 – 6

Rule 1113 (Cont.)                                      (Amended February 5, 2016)

    (E)    Exterior exposure of metal structures.

(33)    INTERIOR STAINS are stains labeled and formulated exclusively for use on interior surfaces.

(34)    LACQUERS are clear or pigmented wood topcoats or clear lacquer sanding sealers, both formulated with nitrocellulose or synthetic resins to dry by evaporation without chemical reaction.

(35)    LOW-SOLIDS COATINGS are coatings containing one pound or less of solids per gallon of material.

(36)    MAGNESITE CEMENT COATINGS are coatings formulated for or applied to magnesite cement decking to protect the magnesite cement substrate from erosion by water.

(37)    MANUFACTURER is any person, company, firm, or establishment who imports, blends, assembles, produces, packages, repackages, or re-labels an architectural coating, excluding retail outlets where labels or stickers may be affixed to containers or where colorant is added at the point of sale.

(38)    MARKET means to facilitate sales through third party vendors including, but not limited to, catalog or ecommerce sales that bring together buyers and sellers. For the purposes of this rule, market does not mean to generally promote or advertise coatings.

(39)    MASTIC COATINGS are coatings formulated to cover holes and minor cracks and to conceal surface irregularities, excluding roof coatings, and applied in a thickness of at least 10 mils (dry, single coat).

(40)    METALLIC PIGMENTED COATINGS are decorative coatings, excluding industrial maintenance and roof coatings, containing at least 0.4 pounds per gallon (48 grams/liter) of coating, as applied, of elemental metallic pigment (excluding zinc).

(41)    MULTI-COLOR COATINGS are coatings which exhibit more than one color when applied, are packaged in a single container and applied in a single coat.

(42)    MULTI-COMPONENT COATINGS are reactive coatings requiring the addition of a separate catalyst or hardener before application to form an acceptable dry film.

(43)    NONFLAT COATINGS are coatings that register a gloss of 5 or greater on a 60 degree meter and a gloss of 15 or greater on an 85 degree meter according to ASTM Test Method D 523.

(44)    NON-SACRIFICIAL ANTI-GRAFFITI COATINGS are clear or opaque Industrial Maintenance Coatings formulated and recommended to deter adhesion

1113 – 7

of graffiti and to resist repeated scrubbing and exposure to harsh solvents, cleansers, or scouring agents used to remove graffiti.

(45)   PEARLESCENT means exhibiting various colors depending on the angles of illumination and viewing, as observed in mother-of-pearl.

(46)   PIGMENTED means containing colorant or dry coloring matter, such as an insoluble powder, to impart color to a substrate.

(47)   POST-CONSUMER COATINGS are finished coatings that would have been disposed of in a landfill, having completed their usefulness to a consumer, and does not include manufacturing wastes.

(48)   PRE-TREATMENT WASH PRIMERS are coatings which contain a minimum of 0.5 percent acid, by weight, applied directly to bare metal surfaces to provide necessary surface etching.

(49)   PRIMERS are coatings applied to a surface to provide a firm bond between the substrate and subsequent coats.

(50)   QUICK-DRY ENAMELS are nonflat, high gloss coatings which comply with the following:

   (A)   Shall be capable of being applied directly from the container by brush or roller under normal conditions, normal conditions being ambient temperatures between 60°F and 80°F; and

   (B)   When tested in accordance with ASTM D 1640 they shall set-to-touch in two hours or less, dry-hard in eight hours or less, and be tack-free in four hours or less by the mechanical test method. Coatings classified as quick-dry enamels are subsumed by the nonflat coating category.

(51)   QUICK-DRY PRIMERS, SEALERS, AND UNDERCOATERS are primers, sealers, and undercoaters which are intended to be applied to a surface to provide a firm bond between the substrate and subsequent coats and which are dry-to-touch in one-half hour and can be recoated in two hours when tested in accordance with ASTM D 1640. Coatings classified as quick-dry primers, sealers, and undercoaters are subsumed by the primer, sealer, undercoater category.

(52)   REACTIVE DILUENT is a liquid, VOC during application and one in which, through chemical and/or physical reaction, such as polymerization, becomes an integral part of the coating.

(53)   REACTIVE PENETRATING SEALERS are clear or pigmented coatings labeled and formulated for application to above-grade concrete and masonry substrates to provide protection from water and waterborne contaminants including, but not

1113 – 8

Rule 1113 (Cont.)                    (Amended February 5, 2016)

limited to, alkalis, acids, and salts.  Reactive Penetrating Sealers must meet the following criteria:

(A)     Used only for reinforced concrete bridge structures for transportation projects within 5 miles of the coast or above 4,000 feet elevation; or for restoration and/or preservation projects on registered historical buildings that are under the purview of a restoration architect.

(B)     Penetrate into concrete and masonry substrates and chemically react to form covalent bonds with naturally occurring minerals in the substrate.

(C)     Line the pores of concrete and masonry substrates with a hydrophobic coating, but do not form a surface film.

(D)     Improve water repellency at least 80 percent after application on a concrete or masonry substrate.  This performance must be verified on standardized test specimens, in accordance with one or more of the following standards: ASTM C67, or ASTM C97/97M, or ASTM C140.

(E)     Provide a breathable waterproof barrier for concrete or masonry surfaces that does not prevent or substantially retard water vapor transmission.  This performance must be verified on standardized test specimens, in accordance with ASTM E96/E96M or ASTM D6490.

(F)     Meet the performance criteria listed in the National Cooperative Highway Research Report 244 (1981), surface chloride screening applications, for products labeled and formulated for vehicular traffic.

(54)   RECYCLED COATINGS are coatings manufactured by a certified recycled paint manufacturer and formulated such that 50 percent or more of the total weight consists of secondary and post-consumer coatings and 10 percent or more of the total weight consists of post-consumer coatings.

(55)   RESTORATION ARCHITECT is an architect that has a valid certificate of registration as an architect issued by the California State Board of Architectural Examiners or the National Council of Architectural Registration Boards and working on registered historical restoration and/or preservation projects.

(56)   RETAIL OUTLET means any establishment at which architectural coatings are sold or offered for sale to consumers.

(57)   ROOF COATINGS are coatings formulated for application to exterior roofs for the primary purpose of preventing penetration of the substrate by water, or reflecting heat and ultraviolet radiation.

1113 - 9

Rule 1113 (Cont.)                                    (Amended February 5, 2016)

(58)  RUST PREVENTATIVE COATINGS are coatings formulated for use in preventing the corrosion of metal surfaces in residential and commercial situations.

(59)  SACRIFICIAL ANTI-GRAFFITI COATINGS are non-binding, clear coatings which are formulated and recommended for applications that allow for the removal of graffiti primarily by power washing.

(60)  SANDING SEALERS are clear wood coatings formulated for or applied to bare wood for sanding and to seal the wood for subsequent application(s) of coatings.

(61)  SEALERS are coatings applied to either block materials from penetrating into or leaching out of a substrate, to prevent subsequent coatings from being absorbed by the substrate, or to prevent harm to subsequent coatings by materials in the substrate.

(62)  SECONDARY (REWORK) COATINGS are fragments of finished coatings or finished coatings from a manufacturing process that has converted resources into a commodity of real economic value, but does not include excess virgin resources of the manufacturing process.

(63)  SHELLACS are clear or pigmented coatings formulated solely with the resinous secretions of the lac insect (laccifer lacca). Shellacs are formulated to dry by evaporation without a chemical reaction providing a quick-drying, solid, protective film for priming and sealing stains and odors; and for wood finishing excluding floors.

(64)  SOLICIT is to require for use or to specify, by written or oral contract.

(65)  SPECIALTY PRIMERS are coatings formulated for or applied to a substrate to seal fire, smoke or water damage, or to condition excessively chalky surfaces. An excessively chalky surface is one that is defined as having chalk rating of four or less as determined by ASTM D4214 – Photographic Reference Standard No. 1 or the Federation of Societies for Coatings Technology "Pictorial Standards for Coatings Defects".

(66)  STAINS are opaque or semi-transparent coatings which are formulated to change the color but not conceal the grain pattern or texture.

(67)  STATIONARY STRUCTURES include, but are not limited to, homes, office buildings, factories, mobile homes, pavements, curbs, roadways, racetracks, and bridges.

(68)  STONE CONSOLIDANTS are coatings that are labeled and formulated for application to stone substrates to repair historical structures that have been

1113 – 10

damaged by weathering or other decay mechanisms.  Stone Consolidants must meet all of the following criteria:

    (A)    Used only for restoration and/or preservation projects on registered historical buildings that are under the purview of a restoration architect.

    (B)    Penetrate into stone substrates to create bonds between particles and consolidate deteriorated material.

    (C)    Specified and used in accordance with ASTM E2167.

(69)    SWIMMING POOL COATINGS are coatings specifically formulated for or applied to the interior of swimming pools including, but not limited to, water park attractions, ponds and fountains, to resist swimming pool chemicals.

(70)    SWIMMING POOL REPAIR COATINGS are chlorinated, rubber-based coatings used for the repair and maintenance of swimming pools over existing chlorinated, rubber-based coatings.

(71)    TILE AND STONE SEALERS are clear or pigmented sealers that are used for sealing tile, stone or grout to provide resistance against water, alkalis, acids, ultraviolet light or staining and which meet one of the following subcategories:

    (A)    Penetrating sealers are polymer solutions that cross-link in the substrate and must meet the following criteria:

        (i)    A fine particle structure to penetrate dense tile such as porcelain with absorption as low as 0.10 percent per ASTM C373, ASTM C97/C97M, or ASTM C642,

        (ii)    Retain or increase static coefficient of friction per ANSI A137.1,

        (iii)    Not create a topical surface film on the tile or stone, and

        (iv)    Allow vapor transmission per ASTM E96/96M.

    (B)    Film forming sealers which leave a protective film on the surface.

(72)    TINT BASE is an architectural coating to which colorants are added.

(73)    TOPCOAT is any final coating, applied in one or more coats, to the interior or exterior of a stationary structure or their appurtenances.

(74)    TRAFFIC COATINGS are coatings formulated for or applied to public streets, highways, and other surfaces including, but not limited to, curbs, berms, driveways, and parking lots.

(75)    TUB AND TILE REFINISHING COATINGS are clear or opaque coatings that are used exclusively for refinishing the surface of a bathtub, shower, or sink and must meet all of the following criteria:

    (A)    Have a scratch hardness of 3H or harder and a gouge hardness of 4H or harder as determined on bonderite 1000 in accordance with ASTM D3363,

1113 – 11

**Rule 1113 (Cont.)**                                           **(Amended February 5, 2016)**

(B)    Have a weight loss of 20 milligrams or less after 1000 cycles as determined with CS-17 wheels on bonderite 1000 in accordance with ASTM D4060,

(C)    Must withstand 1,000 hours or more of exposure with few or no #8 blisters as determined on unscribed bonderite in accordance with ASTM D4585, and ASTM D714, and

(D)    Must have an adhesion rating of 4B or better after 24 hours of recovery as determined on unscribed bonderite in accordance with ASTM D4585 and ASTM D3359.

(76)    UNDERCOATERS are coatings formulated for or applied to substrates to provide a smooth surface for subsequent coats.

(77)    VARNISHES are clear or pigmented wood topcoats formulated with various resins to dry by chemical reaction.

(78)    VOLATILE ORGANIC COMPOUND (VOC) is as defined in Rule 102 – Definition of Terms. For the purpose of this rule, tertiary butyl acetate (tBAc) shall be considered exempt as a VOC only for purposes of VOC emissions limitations or VOC content requirements and will continue to be a VOC for purposes of all recordkeeping, emissions reporting, photochemical dispersion modeling, and inventory requirements which apply to VOCs, when used in industrial maintenance coatings, including zinc-rich industrial maintenance coatings and non-sacrificial anti-graffiti coatings.

(79)    WATERPROOFING SEALERS are coatings which are formulated for the primary purpose of preventing penetration of porous substrates by water.

(80)    WATERPROOFING CONCRETE/MASONRY SEALERS are clear or pigmented sealers that are formulated for sealing concrete and masonry to provide resistance against water, alkalis, acids, ultraviolet light, or staining.

(81)    WOOD COATINGS are film forming coatings used for application to wood substrates only, which are applied to substrates including floors, decks and porches. The Wood Coating category includes all lacquers, varnishes and sanding sealers, regardless of whether they are clear, semi-transparent or opaque.

(82)    WOOD CONDITIONERS are coatings that are formulated for or applied to bare wood, prior to applying a stain, to provide uniform penetration of the stain.

(83)    WOOD PRESERVATIVES are coatings formulated to protect wood from decay or insect attack by the addition of a wood preservative chemical registered by the California Environmental Protection Agency.

Rule 1113 (Cont.)                                    (Amended February 5, 2016)

(84)    WORKSITE means any location where architectural coatings are stored or applied.

(85)    ZINC-RICH INDUSTRIAL MAINTENANCE PRIMERS are primers formulated to contain a minimum of 65 percent metallic zinc powder (zinc dust) by weight of total solids for application to metal substrates.

(c)    Requirements

(1)    Except as provided in paragraphs (c)(3), (c)(4), no person shall supply, sell, offer for sale, market, manufacture, blend, repackage, apply, store at a worksite, or solicit the application of any architectural coating within the District that is listed in the Table of Standards 1 and contains VOC (excluding any colorant added to tint bases) in excess of the corresponding VOC limit specified in the table, after the effective date specified.

(2)    No person within the District shall, at the point of sale of any architectural coating subject to paragraph (c)(1), add to such coating any colorant that contains VOC in excess of the corresponding applicable VOC limit specified in the Table of Standards 2.

1113 – 13

Rule 1113 (Cont.)                    (Amended February 5, 2016)

## TABLE OF STANDARDS 1
## VOC LIMITS

Grams of VOC Per Liter of Coating,
Less Water and Less Exempt Compounds

| COATING CATEGORY | Category Codes | Current Limit[1] | Effective Date | | | Small Container Exemption |
|---|---|---|---|---|---|---|
| | | | 1/1/14 | 2/5/16 | 1/1/19 | |
| Bond Breakers | 5 | 350 | | | | ✓ |
| Building Envelope Coating | 62 | 100 | | | 50 | ✓ |
| Concrete-Curing Compounds | 7 | 100 | | | | ✓ |
| Concrete-Curing Compounds For Roadways and Bridges[2] | 7 | 350 | | | | ✓[3] |
| Concrete Surface Retarder | 58 | 50 | 50 | | | ✓ |
| Default | 51 | 50 | 50 | | | ✓ |
| Driveway Sealer | 52 | 50 | | | | ✓ |
| Dry-Fog Coatings | 8 | 50 | 50 | | | ✓ |
| Faux Finishing Coatings | | | | | | |
| Clear Topcoat | 9a | 100 | 100 | | | ✓ |
| Decorative Coatings | 9 | 350 | | | | ✓ |
| Glazes | 9b | 350 | | | | ✓ |
| Japan | 9c | 350 | | | | ✓ |
| Trowel Applied Coatings | 9d | 50 | 50 | | | ✓ |
| Fire-Proofing Coatings | 10 | 150 | 150 | | | ✓ |
| Flats | 13 | 50 | | | | ✓[5] |
| Floor Coatings | 14 | 50 | | | | ✓ |
| Form Release Compound | 16 | 100 | 100 | | | ✓ |
| Graphic Arts (Sign) Coatings | 17 | 200 | 150 | 200 | | ✓ |
| Industrial Maintenance (IM) Coatings | 19 | 100 | | | | ✓[3] |
| Color Indicating Safety Coatings | | 480 | | | | ✓[3] |
| High Temperature IM Coatings | 18 | 420 | | | | ✓[5] |
| Non-Sacrificial Anti-Graffiti Coatings | 19a | 100 | | | | ✓[3] |
| Zinc-Rich IM Primers | 56 | 100 | | | | ✓[3] |
| Magnesite Cement Coatings | 22 | 450 | | | | ✓[3] |
| Mastic Coatings | 23 | 100 | 100 | | | ✓ |
| Metallic Pigmented Coatings | 24 | 150 | 150 | | | ✓ |
| Multi-Color Coatings | 25 | 250 | | | | ✓[3] |
| Nonflat Coatings | 26, 27, 28 | 50 | | | | ✓[5] |
| Pre-Treatment Wash Primers | 29 | 420 | | | | ✓[3] |
| Primers, Sealers, and Undercoaters | 30 | 100 | | | | ✓ |
| Reactive Penetrating Sealers | 59 | 350 | | | | ✓[4] |
| Recycled Coatings | 33 | 250 | | | 150 | ✓ |
| Roof Coatings | 34 | 50 | | | | ✓ |
| Roof Coatings, Aluminum | 53 | 100 | | | | ✓ |
| Roof Primers, Bituminous | 4 | 350 | | | | ✓[3] |
| Rust Preventative Coatings | 35 | 100 | | | | ✓[4] |
| Sacrificial Anti-Graffiti Coatings | 60 | 50 | | | | ✓[3] |
| Shellac | | | | | | |
| Clear | 37 | 730 | | | | ✓[4] |
| Pigmented | 38 | 550 | | | | ✓[4] |
| Specialty Primers | 39 | 100 | | | | ✓ |
| Stains | 41 | 100 | | | | ✓ |

1113 – 14

Rule 1113 (Cont.)                                    (Amended February 5, 2016)

| COATING CATEGORY | Category Codes | Current Limit[1] | Effective Date | | | Small Container Exemption |
|---|---|---|---|---|---|---|
| | | | 1/1/14 | 2/5/16 | 1/1/19 | |
| Stains, Interior | 40 | 250 | | | | ✓ |
| Stone Consolidants | 61 | 450 | | | | ✓[3] |
| Swimming Pool Coatings | | | | | | |
| Repair | 43 | 340 | | | | ✓[3] |
| Other | 42 | 340 | | | | ✓[3] |
| Tile and Stone Sealers | 63 | 100 | | | | ✓ |
| Traffic Coatings | 45 | 100 | | | | ✓ |
| Tub and Tile Refinishing Coatings | 64 | 420 | | | | ✓[4] |
| Waterproofing Sealers | 48 | 100 | | | | ✓ |
| Waterproofing Concrete/Masonry Sealers | 49 | 100 | | | | ✓ |
| Wood Coatings | | 275 | | | | |
| Varnish | 46, 47 | 275 | | | | |
| Sanding Sealers | 36 | 275 | | | | |
| Lacquer | 20 | 275 | | | | |
| Wood Conditioners | 65 | 100 | | | | |
| Wood Preservatives | | | | | | |
| Below-Ground | 50 | 350 | | | | ✓[3] |
| Other | 55 | 350 | | | | ✓[3] |

1. The specified limits remain in effect unless revised limits are listed in subsequent columns in the Table of Standards.

2. Does not include compounds used for curbs and gutters, sidewalks, islands, driveways and other miscellaneous concrete areas.

3. Effective 02/05/2016, the small container exemption no longer applies per (f)(1).

4. Effective 01/01/2018, the small container exemption no longer applies per (f)(1).

5. Effective 01/01/2019, the small container exemption is further restricted per (f)(1).

6. Effective 01/01/2020, the small container exemption is further restricted per (f)(1).

## TABLE OF STANDARDS 1 (cont.)
## VOC LIMITS

### Grams of VOC Per Liter of Material

| COATING | Limit |
|---|---|
| Low-Solids Coating | 120 |

1113 – 15

Rule 1113 (Cont.)                              (Amended February 5, 2016)

## TABLE OF STANDARDS 2
## VOC LIMITS FOR COLORANTS

Grams of VOC Per Liter of Colorant
Less Water and Less Exempt Compounds

| COLORANT ADDED TO | Limit |
|---|---|
| Architectural Coatings, excluding IM Coatings | 50 |
| Solvent-Based IM | 600 |
| Waterborne IM | 50 |

(3)     Coating Categorization

     (A)     If anywhere on the container of any coating listed in either Table of Standards, on any sticker or label affixed thereto, or in any sales or advertising literature, any representation is made that the coating may be used as, or is suitable for use as, a coating for which a lower VOC standard is specified in the table or in paragraph (c)(1), then the lowest VOC standard shall apply.

     (B)     The provisions of paragraph (c)(3)(A) shall not apply to a coating described in part as a flat coating; nonflat coating; primer, sealer, and undercoater; or represented in part for use on flooring, provided that all of the following requirements are met:

         (i)     The coating meets the definition of a specific coating category for which a higher VOC standard is specified in the Table of Standards,

         (ii)     The coating is labeled in a manner consistent with the definition and all the specific labeling requirements for that specific coating category, and

         (iii)     The coating is suitable and only recommended for the intended uses of that specific coating category.

     (C)     The provisions of paragraph (c)(3)(A) shall not apply to recycled coatings.

(4)     Sell-Through Provision

     (A)     Any coating that is manufactured prior to the effective date of the applicable limit specified in the Table of Standards 1, and that has a VOC content above that limit (but not above the limit in effect on the date of manufacture), may be sold, supplied, offered for sale, or applied for up to three years after the specified effective date.

**1113 – 16**

Rule 1113 (Cont.)                                (Amended February 5, 2016)

    (B)    Any coating sold in a one-liter or smaller container that has a VOC content above the applicable limit specified in the Table of Standards 1 for that coating, which is manufactured prior to the effective date of the elimination or restriction of the small container exemption listed in subparagraph (f)(1)(B) through (f)(1)(E), may be sold, supplied, offered for sale, or applied for up to two years after the specified date.

(5)    All architectural coating or colorant containers from which the contents are used by pouring, siphoning, brushing, rolling, padding, ragging or other means, shall be closed when not in use. These containers include, but should not be limited to: drums, buckets, cans, pails, trays or other storage or application containers.

(6)    No person shall apply or solicit the application within the District of any industrial maintenance coatings, except non-sacrificial anti-graffiti coatings, for residential use or for use in areas such as office space and meeting rooms of industrial, commercial or institutional facilities not exposed to such extreme environmental conditions described in the definition of industrial maintenance coatings.

(7)    General Prohibition

No person shall supply, sell, market, offer for sale, manufacture, blend, or repackage any architectural coating or colorant in the District subject to the provisions of this rule with any materials that contain in excess of 0.1 percent by weight any Group II exempt compounds listed in Rule 102. Cyclic, branched, or linear, completely methylated siloxanes (VMS) are not subject to this prohibition.

(d)    Administrative Requirements

(1)    Containers for all coatings, or any colorants manufactured on and after January 1, 2017, subject to this rule shall display the date of manufacture of the contents or a code indicating the date of manufacture. The manufacturers of such coatings or colorants shall file with the Executive Officer of the District and the Executive Officer of the Air Resources Board an explanation of each code.

(2)    Containers for all coatings subject to the requirements of this rule shall carry a statement of the manufacturer's recommendation regarding thinning of the coating. This requirement shall not apply to the thinning of architectural coatings with water. The recommendation shall specify that the coating is to be employed without thinning or diluting under normal environmental and application conditions, unless any thinning recommended on the label for normal

**1113 – 17**

Rule 1113 (Cont.)                                    (Amended February 5, 2016)

environmental and application conditions do not cause a coating to exceed its applicable standard.

(3)     Each container of any coating, or any colorant manufactured on and after January 1, 2017, subject to this rule shall display the maximum VOC content in grams per liter, as follows:

(A)     For coatings or colorants packaged in a single container, the VOC per liter of coating (less water and less exempt compounds, and excluding any colorant added to the tint base) as supplied, after any recommended thinning;

(B)     For multi-component coatings, the VOC per liter of coating (less water and exempt compounds, and excluding any colorant added to the tint base) after mixing the components, as recommended for use by the architectural coatings manufacturer;

(C)     For concentrates, the VOC per liter of coating (less water and exempt compounds, and excluding any colorant added to the tint base) at the minimum dilution recommended for use by the architectural coatings manufacturer;

(D)     For low solids coatings, the VOC per liter of material (excluding any colorant added to the tint bases) after any recommended thinning; and

(E)     VOC content displayed may be calculated using product formulation data, or may be determined using the test method in subdivision (e). VOC content calculated from formulation data shall be adjusted by the manufacturer to account for cure volatiles (if any) and maximum VOC content within production batches. The VOC content shall be displayed on the coating container such that the required language is:

(i)     Noticeable and in clear and legible English;

(ii)    Separated from other text; and

(iii)   Conspicuous, as compared with other words, statements, designs, or devices in the label as to render it likely to be read and understood by an ordinary individual under customary conditions of purchase or use.

(4)     The labels of all rust preventative coatings shall prominently display the statement "For Metal Substrates Only".

(5)     The labels of all specialty primers shall prominently display one or more of the following descriptions:

(A)     For fire-damaged substrates.

1113 – 18

Rule 1113 (Cont.)                                   (Amended February 5, 2016)

(B)   For smoke-damaged substrates.

(C)   For water-damaged substrates.

(D)   For excessively chalky substrates.

(6)   The labels of concrete-curing compounds manufactured and used for roadways and bridges shall prominently display the statement "FOR ROADWAYS AND BRIDGES ONLY (Not for Use on Curbs and Gutters, Sidewalks, Islands, Driveways and Other Miscellaneous Concrete Areas)".

(7)   All Clear Topcoat for Faux Finishing coatings shall prominently display the statement "This product can only be sold as a part of a Faux Finishing coating system".

(8)   A manufacturer, distributor, or seller of a coating meeting the requirements of this rule, who supplies that coating to a person who applies it in a non-compliant manner, shall not be liable for that non-compliant use, unless the manufacturer, distributor, or seller knows that the supplied coating would be used in a non-compliant manner.

(9)   Manufacturers of recycled coatings shall submit a letter to the Executive Officer certifying their status as a Recycled Paint Manufacturer.

(e)   **Test Methods**

For the purpose of this rule, the following test methods shall be used:

(1)   **VOC Content of Coatings and Colorants**

The VOC content of coatings subject to the provisions of this rule shall be determined by:

(A)   U.S. EPA Reference Test Method 24 (Determination of Volatile Matter Content, Water Content, Density, Volume Solids, and Weight Solids of Surface Coatings, Code of Federal Regulations Title 40, Part 60, Appendix A) with the exempt compounds' content determined by Method 303 (Determination of Exempt Compounds) in the South Coast Air Quality Management District's (SCAQMD) "Laboratory Methods of Analysis for Enforcement Samples" manual, or

(B)   Method 304 (Determination of Volatile Organic Compounds (VOC) in Various Materials) in the SCAQMD's "Laboratory Methods of Analysis for Enforcement Samples" manual.

(C)   Method 313 (Determination of Volatile Organic Compounds VOC by Gas Chromatography-Mass Spectrometry) in the SCAQMD's "Laboratory Methods of Analysis for Enforcement Samples" manual.

1113 – 19

Rule 1113 (Cont.)                                    (Amended February 5, 2016)

    (D)    ASTM Test Method 6886 (Standard Test Method for Determination of the Weight Percent Individual Volatile Organic Compounds in Waterborne Air-Dry Coatings by Gas Chromatography).

    (E)    Exempt Perfluorocarbons

The following classes of compounds:

    cyclic, branched, or linear, completely fluorinated alkanes

    cyclic, branched, or linear, completely fluorinated ethers with no unsaturations

    cyclic, branched, or linear, completely fluorinated tertiary amines with no unsaturations

    sulfur-containing perfluorocarbons with no unsaturations and with sulfur bonds only to carbon and fluorine

will be analyzed as exempt compounds for compliance with subdivision (c), only when manufacturers specify which individual compounds are used in the coating formulations. In addition, the manufacturers must identify the U.S. EPA, CARB, and SCAQMD approved test methods, which can be used to quantify the amount of each exempt compound.

(2)    Acid Content of Coatings

The acid content of a coating subject to the provisions of this rule shall be determined by ASTM Test Method D 1613 (Acidity in Volatile Solvents and Chemical Intermediates Used in Paint, Varnish, Lacquer, and Related Products).

(3)    Metal Content of Coatings

The metallic content of a coating subject to the provisions of this rule shall be determined by Method 318 (Determination of Weight Percent Elemental Metal in Coatings by X-Ray Diffraction) in the SCAQMD's "Laboratory Methods of Analysis for Enforcement Samples" manual.

(4)    Drying Times

The set-to-touch, dry-hard, dry-to-touch, and dry-to-recoat times of a coating subject to the provisions of this rule shall be determined by ASTM Test Method D 1640 (Standard Test Methods for Drying, Curing, or Film Formation of Organic Coatings at Room Temperature). The tack-free time of a coating subject to the provisions of this rule shall be determined by ASTM Test Method D 1640, according to the Mechanical Test Method.

(5)    Gloss Determination

The gloss shall be determined by ASTM Test Method D 523 (Specular Gloss).

(6)    Gonioapparent Characteristics for Coatings

1113 – 20

**Rule 1113 (Cont.)**                                         (Amended February 5, 2016)

A coating will be determined to have a gonioapparent appearance by ASTM E 284 (Standard Terminology of Appearance).

(7)     Performance criteria for Reactive Penetrating Sealers shall be determined by the following:

    (A)     Water Repellency

        (i)     ASTM C67 (Standard Test Methods for Sampling and Testing Brick and Structural Clay Tile);

        (ii)    ASTM C97/97M (Standard Test Methods for Absorption and Bulk Specific Gravity of Dimension Stone); or

        (iii)   ASTM C140 (Standard Test Methods for Sampling and Testing Concrete Masonry Units and Related Units).

    (B)     Water Vapor Transmission

        (i)     ASTM E96/96M (Standard Test Methods for Water Vapor Transmission of Materials); or

        (ii)    ASTM D6490 (Standard Test Method for Water Vapor Transmission of Nonfilm Forming Treatments Used on Cementitious Panels).

    (C)     Chloride Screening shall be determined using the National Cooperative Highway Research Report 244 (1981), "Concrete Sealers for the Protection of Bridge Structures".

(8)     Performance criteria for Building Envelope Coatings shall be determined by the following:

    (A)     Air Barriers:

        ASTM E2178 (Standard Test Method for Air Permeance of Building Materials).

    (B)     Water Resistive Barriers

        (i)     ASTM E331 (Standard Test Method for Water Penetration of Exterior Windows, Skylights, Doors, and Curtain Walls by Uniform Static Air Pressure Difference); and

        (ii)    ASTM E96/96M (Standard Test Methods for Water Vapor Transmission of Materials).

(9)     Selection and Use of Stone Consolidants shall be determined by ASTM E2167 (Standard Guide for Selection and Use of Stone Consolidants).

(10)    Performance criteria for Tub and Tile Refinishing Coatings shall be determined by the following:

    (A)     ASTM D3363 (Standard Test Method for Film Hardness by Pencil Test);

Rule 1113 (Cont.)                                        (Amended February 5, 2016)

      (B)    ASTM D4060 (Standard Test Method for Abrasion Resistance of Organic Coatings by the Taber Abraser);

      (C)    ASTM D4585 (Standard Practice for Testing Water Resistance of Coatings Using Controlled Condensation);

      (D)    ASTM D714 (Standard Test Method for Evaluating Degree of Blistering of Paints); and

      (E)    ASTM D3359 (Standard Test Methods for Measuring Adhesion by Tape Test).

(11)    Performance criteria for penetrating Tile and Stone Sealers shall be determined by the following:

      (A)    Penetration of Dense Tile

          (i)    ASTM C373 (Standard Test Method for Water Absorption, Bulk Density, Apparent Porosity, and Apparent Specific Gravity of Fired Whiteware Products, Ceramic Tiles, and Glass Tiles);

          (ii)    ASTM C97/C97M (Standard Test Methods for Absorption and Bulk Specific Gravity of Dimension Stone); or

          (iii)    ASTM C642 (Standard Test Method for Density, Absorption, and Voids in Hardened Concrete).

      (B)    Static Coefficient of Friction by American National Standard Specification for Ceramic Tile (ANSI A137.1).

      (C)    Water Vapor Transmission by ASTM E96/96M (Standard Test Methods for Water Vapor Transmission of Materials).

(12)    Degree of Chalking Determination

ASTM D4214 (Standard Test Methods for Evaluating the Degree of Chalking of Exterior Paint Films).

(13)    Equivalent Test Methods

Other test methods determined to be equivalent after review by the Executive Officer, CARB, and the U.S. EPA, and approved in writing by the District Executive Officer may also be used.

(14)    Multiple Test Methods

When more than one test method or set of test methods are specified for any testing, a violation of any requirement of this rule established by any one of the specified test methods or set of test methods shall constitute a violation of the rule.

(15)    All test methods referenced in this subdivision shall be the version most recently approved by the appropriate governmental entities.

Rule 1113 (Cont.)                                    (Amended February 5, 2016)

(f)     Exemptions

(1)     Small Container Exemption

The provisions of the Table of Standards 1 and paragraph (c)(1) of this rule shall not apply to architectural coatings in containers having capacities of one liter (1.057 quart) or less, but shall apply to the following:

(A)     Wood Coatings, including Lacquers, Varnishes, and Sanding Sealers.

(B)     Effective February 5, 2016, Concrete-Curing Compounds For Roadways and Bridges; Magnesite Cement Coatings; Multi-Color Coatings; Pre-Treatment Wash Primers; Roof Primers, Bituminous; Sacrificial Anti-Graffiti Coatings; Stone Consolidants; Repair and Other Swimming Pool Coatings; and Below-Ground and Other Wood Preservatives.

(C)     Effective January 1, 2018, Tub and Tile Refinishing Coatings; Clear and Pigmented Shellacs; and Reactive Penetrating Sealers.

(D)     Effective January 1, 2019, Flats and Nonflat-Coatings that are sold:

(i)     In containers having capacities greater than eight fluid ounce, or

(ii)    For purposes other than touch up.

(E)     Effective January 1, 2019, Industrial Maintenance Coatings, including Color Indicating Safety Coatings, High Temperature IM Coatings, Non-Sacrificial Anti-Graffiti Coatings, and Zinc-Rich IM Primers that are sold:

(i)     In containers having capacities greater than one liter, or

(ii)    For purposes other than touch up, or

(iii)   Displayed or advertised for sale at a retail outlet.

(F)     Effective January 1, 2020, Rust Preventative Coatings that are sold:

(i)     In containers having capacities greater than eight fluid ounce, or

(ii)    For purposes other than touch up.

(2)     The small container exemption only applies if the following conditions are met:

(A)     The manufacturer reports the sales in the Rule 314 Annual Quantity and Emissions Report. The loss of this exemption due to the failure of the manufacturer to submit the Rule 314 Annual Quantity and Emissions Report shall apply only to the manufacturer.

(B)     The coating containers of the same specific coating category listed in the Table of Standards 1, are not bundled together to be sold as a unit that exceeds one liter (1.057 quarts), or eight fluid ounces for coatings under subparagraph (f)(1)(D) as of January 1, 2019, or eight fluid ounces for

1113 – 23

**Rule 1113 (Cont.)**                    **(Amended February 5, 2016)**

coatings under subparagraph (f)(1)(F) as of January 1, 2020, excluding containers packed together for shipping to a retail outlet.

(C)    The label or any other product literature does not suggest combining multiple containers so that the combination exceeds one liter (1.057 quarts) or eight fluid ounces under (f)(1)(D) as of January 1, 2019, or eight fluid ounces for coatings under subparagraph (f)(1)(F) as of January 1, 2020.

(3)    The provisions of subparagraph (d)(1) through (d)(7) shall not apply to architectural coatings in containers having capacities of two fluid ounces (59mL) or less.

(4)    The provisions of this rule shall not apply to:

(A)    Architectural coatings supplied, sold, offered for sale, marketed, manufactured, blended, repackaged or stored in this District for shipment outside of this District or for shipment to other manufacturers for repackaging.

(B)    Emulsion type bituminous pavement sealers.

(C)    Aerosol coating products.

(D)    Use of stains and lacquers in all areas within the District at an elevation of 4,000 feet or greater above sea level or sale in such areas for such use.

(5)    The provisions of paragraph (c) shall not apply to facilities which apply coatings to test specimens for purposes of research and development of those coatings.

(g)    Solvent Cleaning

(1)    Solvent cleaning that is conducted as part of a business including solvent cleaning of architectural coating application equipment and the storage and disposal of VOC-containing materials used in cleaning operations are subject to the provisions of Rule 1171 - Solvent Cleaning Operations.

(2)    Solvent cleaning that is not conducted as part of a business and solvent thinning of coatings including solvent cleaning of architectural coating application equipment and solvent thinning of architectural coatings are subject to the provisions of Rule 1143 – Consumer Paint Thinner and Multi-Purpose Solvents.

1113 – 24

(Adopted March 6, 2009) (Amended June 4, 2010)(Amended July 9, 2010)
(Amended December 3, 2010)

**RULE 1143.**     **CONSUMER PAINT THINNERS & MULTI-PURPOSE
                   SOLVENTS**

(a)   Purpose

The purpose of this rule is to reduce emissions of volatile organic compounds
(VOCs) from the use, storage and disposal of consumer paint thinners and multi-
purpose solvents commonly used in thinning of coating materials, cleaning of
coating application equipment, and other solvent cleaning operations by limiting
their VOC content.

(b)   Applicability

This rule is applicable to any person who supplies, sells, offers for sale, or
manufactures consumer paint thinners and multi-purpose solvents for sale in the
District, as well as any person who uses or solicits the use of any consumer paint
thinner and multi-purpose solvent within the District.

(c)   Definitions

For the purpose of this rule, the following definitions shall apply:

(1)   ARTIST SOLVENTS/THINNERS are any liquid products that meet and
      are labeled to meet the requirements of ASTM D4236-94 (Reapproved
      2005) Standard Practice for Labeling Art Materials for Chronic Health
      Hazards, which is incorporated by reference herein, and have been refined
      to remove impurities for artistic use for the purpose of reducing the
      viscosity of, or removing, art coating compositions or components.  Artist
      Solvents/Thinners do not include commercial-grade solvents or thinners.

(2)   CONSUMER MULTI-PURPOSE SOLVENTS are any liquid products
      designed or labeled to be used for dispersing or dissolving or removing
      contaminants or other organic materials for personal, family, household, or
      institutional use including but not limited to the following: (1) products
      that do not display specific use instructions on the product container or
      packaging, (2) products that do not specify an end-use function or
      application on the product container or packaging, (3) solvents used in
      institutional facilities, except for laboratory reagents used in analytical,
      educational, research, scientific or other laboratories, (4) "Paint clean-up"

1143 - 1

**Rule 1143 (Cont.)**               (Adopted March 6, 2009)(Amended June 4, 2010)
                                   (Amended July 9, 2010)(Amended December 3, 2010)

products, and (5) products labeled to prepare surfaces for painting. For the purpose of this definition only, "Paint clean-up" means any liquid product labeled for cleaning oil-based or water-based paint, lacquer, varnish, or related coatings from, but not limited to, painting equipment or tools, plastics or metals.

"Consumer Multi-purpose Solvents" do not include solvents used in cold cleaners, vapor degreasers, conveyorized degreasers or film cleaning machines, or solvents that are incorporated into, or used exclusively in the manufacture or construction of, the goods or commodities at the site of the establishment. "Multi-purpose Solvents" also do not include any products making any representation that the product may be used as, or is suitable for use as a consumer product which qualifies under another definition in California Code of Regulations Title 17, § 94508 as of the date of adoption.

(3)     CONSUMER PAINT THINNERS are any liquid products used for reducing the viscosity of coating compositions or components for personal, family, household, or institutional use, including, but not limited to, products that prominently display the term "Paint Thinner," "Lacquer Thinner," "Thinner," or "Reducer" on the front panel of its packaging.

(4)     DISTRIBUTOR means any person to whom consumer products are sold or supplied for the purposes of resale or distribution in commerce, except that manufacturers, retailers, and consumers are not distributors.

(5)     EXEMPT COMPOUND is as defined in Rule 102.

(6)     FORMULATION DATA is the actual product recipe which itemizes all the ingredients contained in a product including VOCs and the quantities thereof used by the manufacturer to create the product. Material Safety Data Sheets (MSDS) are not considered formulation data.

(7)     GRAMS OF VOC PER LITER OF MATERIAL is the weight of VOC per volume of material and can be calculated by the following equation:

**1143 - 2**

Rule 1143 (Cont.)                              (Adopted March 6, 2009)(Amended June 4, 2010)
                                               (Amended July 9, 2010)(Amended December 3, 2010)

$$\text{Grams of VOC per Liter of Material} = \frac{W_s - W_w - W_{es}}{V_m}$$

Where:

$W_s$   =   weight of volatile compounds in grams

$W_w$   =   weight of water in grams

$W_{es}$   =   weight of exempt compounds in grams

$V_m$   =   volume of the material in liters

(8)   INDUSTRIAL MAINTENANCE COATINGS are coatings, including primers, sealers, undercoaters, intermediate coatings and topcoats, formulated for or applied to substrates, including floors that are exposed to one or more of the following extreme environmental conditions:

   (A)   immersion in water, wastewater, or chemical solutions (aqueous and non-aqueous solutions), or chronic exposure of interior surfaces to moisture condensation;

   (B)   acute or chronic exposure to corrosive, caustic or acidic agents, or similar chemicals, chemical fumes, chemical mixtures, or solutions;

   (C)   repeated exposure to temperatures in excess of 250 degrees Fahrenheit;

   (D)   repeated heavy abrasion, including mechanical wear and repeated scrubbing with industrial solvents, cleaners, or scouring agents; or

   (E)   exterior exposure of metal structures.

(9)   LACQUER THINNERS are solvents that are manufactured for the purpose of thinning, diluting, dissolving, and for clean-up of lacquer coatings.

(10)   MANUFACTURER means any person, company, firm, or establishment who imports, manufactures, blends, assembles, produces, packages, repackages, or re-labels a consumer paint thinner or multi-purpose solvent. The manufacturers listed on the product's label shall be primarily responsible for compliance with applicable provisions of this rule. If the label lists two or more manufacturers, they may mutually designate in writing a manufacturer responsible for compliance with this rule. That writing shall be filed with the Executive Officer.

(11)   PERSON means any individual, firm, association, organization, partnership, business trust, corporation, company, contractor, supplier,

1143 - 3

Rule 1143 (Cont.)                            (Adopted March 6, 2009)(Amended June 4, 2010)
                                             (Amended July 9, 2010)(Amended December 3, 2010)

installer, user or owner, or any state or local governmental agency or public district or any other officer or employee thereof. "Person" also means the United States or its agencies to the extent authorized by Federal law.

(12)   RESPONSIBLE PARTY for a corporation is a corporate officer or an authorized representative so delegated by a corporate officer. Delegation of an authorized representative must be made in writing to the Executive Officer. A responsible party for a partnership or sole proprietorship is the general partner or proprietor, respectively.

(13)   RETAIL OUTLET means any establishment at which consumer products are sold, supplied, or offered for sale directly to consumers.

(14)   SOLICIT is to require for use or to specify, by written or oral contract.

(15)   SOLVENTS include diluents and thinners and are defined as organic materials which are liquids at standard conditions and which are used as dissolvers, viscosity reducers or cleaning agents.

(16)   SOLVENT CLEANING is the removal of adhesives, inks, coatings, and contaminants which include, but are not limited to, dirt, soil, and grease from parts, products, tools, machinery, equipment, and general work areas.

(17)   SOLVENT FLUSHING is the use of a solvent to remove adhesives, inks, coatings, or contaminants from the internal surfaces and passages of the equipment by inducing a rapid flow of solvent through the equipment.

(18)   VOC (VOLATILE ORGANIC COMPOUND) is as defined in Rule 102.

(19)   VOC CONTENT means the total weight of VOC in a product expressed as a percentage of the product weight or as a mass-based concentration expressed in grams per liter of material (g/L) or pounds per gallon (lb/Gal).

(d)   Requirements

(1)   Except as provided in paragraph (d)(2), no person shall supply, sell, offer for sale, manufacture, blend, package or repackage any consumer paint thinner or multi-purpose solvent for use in the District unless the consumer paint thinner or multi-purpose solvent complies with the applicable VOC content limits set forth in the table below:

1143 - 4

Rule 1143 (Cont.)

(Adopted March 6, 2009)(Amended June 4, 2010)
(Amended July 9, 2010)(Amended December 3, 2010)

| CATEGORY | EFFECTIVE 1/1/2010 VOC Content g/L or (lb/Gal) | EFFECTIVE 1/1/2011 VOC Content g/L or (lb/Gal) |
|---|---|---|
| Consumer Paint Thinner | 300 (2.50) | 25 (0.21) |
| Consumer Multi-Purpose Solvent | 300 (2.50) | 25 (0.21) |

(2)    Sell-Through Provision

    (A)    Any consumer paint thinner or multi-purpose solvent that is manufactured prior to the effective date of the applicable limit specified in paragraph (d)(1), and that has a VOC content above that limit (but not above the limit in effect on the date of manufacture), may be sold, supplied, offered for sale, or used for up to one year after the specified effective date.

    (B)    Consumer paint thinners manufactured prior to July 9, 2010 and labeled for more than one use including industrial maintenance coating thinning, may be sold, supplied, offered for sale, or used up to April 1, 2011.

(3)    The prohibition of sale specified in paragraphs (d)(1) and (d)(5) shall not apply to any manufacturer of consumer paint thinners or multi-purpose-solvents provided that the product was sold to an independent distributor that was informed in writing by the manufacturer about the compliance status of the product in the District.

(4)    Any solvent container in which the contents therein are applied directly to a surface from said container by pouring, siphoning, brushing, rolling, padding, rag application or other means, shall be closed when not in use. These solvent containers include, but shall not be limited to: drums, buckets, cans, pails, trays or other application containers.

(5)    General Prohibition

No person shall supply, sell, offer for sale, manufacture, blend, package, or repackage any consumer paint thinner or multi-purpose solvent for use in the District subject to the provisions of this rule with any materials that contain in the excess of 0.1% by weight any Group II exempt compounds listed in Rule 102. Cyclic, branched, or linear, completely methylated siloxanes (VMS) are not subject to this prohibition.

1143 - 5

Rule 1143 (Cont.)                                   (Adopted March 6, 2009)(Amended June 4, 2010)
                                                    (Amended July 9, 2010)(Amended December 3, 2010)

(e)   **Administrative Requirements**

    (1)   No person shall sell, supply, offer for sale, manufacture, blend, package, or repackage for use in the District any "Flammable" or "Extremely Flammable" Consumer Paint Thinner or Multi-purpose Solvent named, on the Principal Display Panel as "Paint Thinner", "Multi-purpose Solvent", "Clean-up Solvent", or "Paint Clean-up".

    (2)   Paragraph (e)(1) does not apply to products that meet any of the following criteria:

        (A)   Products which include an attached "hang tag" or sticker that displays, at a minimum, the following statement: "Formulated to meet low VOC limits: see warnings on label".

        (B)   Products which include an attached "hang tag" or sticker that displays, at a minimum, the following statement: "Formulated to meet low VOC limits with [the common name of the chemical compound (e.g., 'Acetone', 'Methyl Acetate', etc.) that results in the product meeting the criteria for 'Flammable' or 'Extremely Flammable']".

        (C)   Products which include an attached "hang tag" as a second Principal Display Panel that displays, at a minimum, the following statement: "Formulated to meet low VOC limits" placed adjacent to and associated with the required Consumer Product Safety Commission (CPSC) warning.

        (D)   Products where the Principal Display Panel displays, in a font size as large as, or larger than, the largest font size of any other words on the panel, the following statement: "Formulated to meet low VOC limits" placed adjacent to and associated with the required CPSC warning.

        (E)   Products where the Principal Display Panel displays, in a font size as large as, or larger than, the largest font size of any other words on the panel, the common name of the chemical compound (e.g., "Acetone," "Methyl Acetate," etc.) that results in the product meeting the criteria for "Flammable" or "Extremely Flammable."

        (F)   Products that meet the labeling requirements of the CARB Consumer Product Regulation specified in title 17, CCR, section 94512(e) as adopted.

        (G)   Products that are manufactured on or before July 9, 2010.

1143 - 6

Rule 1143 (Cont.)                    (Adopted March 6, 2009)(Amended June 4, 2010)
                                     (Amended July 9, 2010)(Amended December 3, 2010)

None of the above labeling or notice requirements preclude the use of any additional labeling or notice for consumer education.

(3)    For the purposes of paragraphs (e)(1) and (e)(2) a product is "Flammable" or "Extremely Flammable" if it is labeled as "Flammable" or "Extremely Flammable" on the product container, or if the product meets the criteria for these specified in title 16, Code of Federal Regulations, section 1500.3 (c)(6).

(4)    Each product container shall clearly display the VOC content as determined from the actual product formulation data.

(5)    The information required by paragraphs (e)(1) through (e)(3) shall be displayed on the product container such that it is readily observable without removing or disassembling any portion of the product container or packaging.

(6)    No person shall remove, alter, conceal, or deface the information required by paragraphs (e)(1) through (e)(3) prior to final sale of the product.

(7)    In conjunction with the changes in VOC content limits, the Executive Officer shall develop a public education and outreach program to inform consumers of potential product changes that use more flammable substances by jointly working with the local fire departments to include, but not be limited to: public service announcements in both English and Spanish to be aired on television and radio from October 2010 to January 2012; training retailers, including big box retailers at their corporate headquarters, in November 2010 about these potential changes so that they may alert their consumers; dissemination of 25,000 hardcopy brochures in several languages from November 2010 to January 2012; alerts through Twitter, and placement of electronic brochures and Public Service Announcements (PSAs) on AQMD, CARB, YouTube, local fire department and local city websites from November 2010 to January 2012. The Executive Officer shall report the status of the public education and outreach program to the Stationary Source Committee in November 2010 and in November 2011. The Executive Officer may extend the public education and outreach program beyond January 2012, if he determines that additional consumer education is needed.

(8)    Point of sale containers, for sale or distribution, of any consumer paint thinner or multi-purpose solvent subject to this rule shall display the

1143 - 7

Rule 1143 (Cont.)                        (Adopted March 6, 2009)(Amended June 4, 2010)
                                         (Amended July 9, 2010)(Amended December 3, 2010)

maximum VOC content, as supplied, and the maximum VOC content after any dilution as recommended by the manufacturer.

(9)     Point of sale containers, for sale or distribution, of any consumer paint thinner and multi-purpose solvent subject to this rule shall display the date of manufacture of the contents or a code indicating the date of manufacture.  The manufacturers of such consumer paint thinners and multi-purpose solvents shall file with the Executive Officer an explanation of each code.

(10)    Any manufacturer that supplies consumer paint thinners and multi-purpose solvents with intent to sell in the District shall submit an application as specified by the Executive Officer to apply for a manufacturer identification (ID) number by the applicable date in subdivision (g).  The application form shall be signed by the responsible party for manufacturer certifying that all information submitted (including electronic submittals) is true and correct.  The Executive Officer shall be notified in writing within 30 days of any change in the responsible party for the manufacturer.

(11)    On or before May 1, 2010, and each subsequent January 1 thereafter, all manufacturers subject to this rule shall provide to the District a list of all their U.S. distributors to whom they supply products subject to this rule, including but not limited to private label and toll manufactured products. The list shall be in a format determined by the Executive Officer and shall include the distributor's name, address, contact person and phone number.

(12)    On or before April 1, 2010, and every subsequent April 1 (the official due date), each manufacturer subject to this rule shall submit an annual quantity and emissions report to the Executive Officer.

(f)    Recordkeeping

(1)     Manufacturers shall maintain a copy of the application receipt from the District.  The receipt shall be maintained for five (5) years and made available upon request by the Executive Officer.

(2)     Manufacturers shall maintain records to verify data necessary to determine annual consumer paint thinner and multi-purpose solvent sales subject to this rule and VOC emissions in the District, and compliance with applicable rules and regulations.  The records shall be maintained for five

**1143 - 8**

Rule 1143 (Cont.)                    (Adopted March 6, 2009)(Amended June 4, 2010)
                                     (Amended July 9, 2010)(Amended December 3, 2010)

(5) years and made available upon request by the Executive Officer. Such records shall include but not be limited to:

(A)    Product formulation records (to include VOC content):

    (i)    Laboratory reports [including percent weight of non-volatiles, water, and exempts (if applicable); density of the product; and raw laboratory data] of test methods conducted as specified in paragraph (i)(1), or

    (ii)   Product formulation data, including physical properties analyses, as applicable, with a VOC content calculation demonstration; and

(B)    Production records including batch tickets with the date of manufacture, batch weight and volume; and

(C)    Distribution records:

    (i)    Customer lists or store distribution lists or both (as applicable) and

    (ii)   Shipping manifests or bills of lading or both (as applicable); and

(D)    Sales records consisting of point of sale receipts or invoices to local distributors or both, as applicable.

(g)    Compliance Dates

(1)    Consumer paint thinner and multi-purpose solvent manufacturers that begin to manufacture, supply, sell or offer for sale consumer paint thinners and multi-purpose solvents subject to this rule and for use in the District after July 1, 2009 shall submit the application required in paragraph (e)(10) no later than thirty (30) calendar days prior to manufacturing, supplying, selling, or offering for sale, any consumer paint thinner and multi-purpose solvent subject to this rule and for use in the District.

(2)    Within thirty (30) calendar days after a change of consumer paint thinner and multi-purpose solvent manufacturer, the new consumer paint thinner and multi-purpose solvent manufacturer shall submit the application for a company ID number as required in paragraph (e)(10). That filing shall include the previous consumer paint thinner and multi-purpose solvent manufacturer's ID number.

1143 - 9

Rule 1143 (Cont.)            (Adopted March 6, 2009)(Amended June 4, 2010)
                                    (Amended July 9, 2010)(Amended December 3, 2010)

(h)     **Information exempt from Disclosure**

Information submitted to the Executive Officer may be designated as exempt from disclosure consistent with District guidelines implementing the California Public Records Act (Govt. Code §§ 6250-6276.48).

(i)     **Test Methods**

For the purpose of this rule, the following test methods shall be used:

(1)     **Determination of VOC Content**

The VOC content of materials subject to the provisions of this rule shall be determined by:

(A)     U.S. EPA Reference Test Method 24 (Determination of Volatile Matter Content, Water Content, Density, Volume Solids, and Weight Solids of Surface Coatings, Code of Federal Regulations Title 40, Part 60, Appendix A) with the exempt compound content determined by Method 303 (Determination of Exempt Compounds) in the SCAQMD "Laboratory Methods of Analysis for Enforcement Samples" manual; or

(B)     Method 304 [Determination of Volatile Organic Compounds (VOC) in Various Materials] in the SCAQMD "Laboratory Methods of Analysis for Enforcement Samples" manual.

(C)     Exempt Perfluorocarbon Compounds

The following classes of compounds:

cyclic, branched, or linear, completely fluorinated alkanes

cyclic, branched, or linear, completely fluorinated ethers with no unsaturations;

cyclic, branched, or linear, completely fluorinated tertiary amines with no unsaturations; and

sulfur-containing perfluorocarbons with no unsaturations and with sulfur bonds only to carbon and fluorine

will be analyzed as exempt compounds for compliance with subdivision (d), only when manufacturers specify which individual compounds are used in the solvent formulations.  In addition, the manufacturers must identify the U.S. EPA, CARB, and SCAQMD approved test methods, which can be used to quantify the amount of each exempt compound.

1143 - 10

Rule 1143 (Cont.)                           (Adopted March 6, 2009)(Amended June 4, 2010)
                                          (Amended July 9, 2010)(Amended December 3, 2010)

   (2)   Equivalent Test Methods
         Other test methods determined to be equivalent upon approval in writing
         by the Executive Officer, CARB, and the U.S. EPA may also be used.
   (3)   Multiple Test Methods
         When more than one test method or set of test methods are specified for
         any testing, a violation of any requirement of this rule established by any
         one of the specified test methods or set of test methods shall constitute a
         violation of the rule.
   (4)   All test methods referenced in this subdivision shall be the version most
         recently approved by the appropriate governmental entities.

(j)  Exemptions
   (1)   The provisions of this rule shall not apply to:
         (A)   Solvents sold in this District for shipment outside of this District or
               for shipment to other manufacturers for repackaging.
   (2)   Paragraph (d)(1) of this rule shall not apply to:
         (A)   Solvents provided that they are labeled and designated exclusively
               for the clean-up of polyaspartic and polyurea coatings application
               equipment.   This exemption does not apply if there are any
               additional use claims on the label or any other product literature.
               This exemption does not apply to any person selling or using the
               otherwise exempt solvent for a non-exempt purpose.
         (B)   Thinners provided that they are labeled and designated exclusively
               for the thinning of Industrial Maintenance (IM) coatings, Zinc-
               Rich IM Primers, and High Temperature IM Coatings.   This
               exemption does not apply if there are any additional use claims on
               the label or any other product literature.  This exemption does not
               apply to any person selling or using the otherwise exempt thinner
               for a non-exempt purpose.
         (C)   Artist solvents/thinners provided that they are labeled and
               designated exclusively to reduce the viscosity of, or remove, art
               coating compositions or components and are individually packaged
               in containers having a total capacity equal to or less than 1 liter.

1143 - 11

**Rule 1143 (Cont.)**                          (Adopted March 6, 2009)(Amended June 4, 2010)
                                              (Amended July 9, 2010)(Amended December 3, 2010)

(k)   Severability

If any provision of this rule is held by judicial order to be invalid, or invalid or inapplicable to any person or circumstance, such order shall not affect the validity of the remainder of this rule, or the validity or applicability of such provision to other persons or circumstances. In the event any of the exceptions to this rule is held by judicial order to be invalid, the persons or circumstances covered by the exception shall instead be required to comply with the remainder of this rule.

**1143 - 12**

(Adopted April 7, 1989)(Amended March 2, 1990)(Amended Feb. 1, 1991)
(Amended July 19, 1991)(Amended August 2, 1991)
(Amended December 4, 1992)(Amended December 10, 1993)
(Amended April 11, 1997)(Amended February 13, 1998)(Amended September 15, 2000)
(Amended June 7, 2002)(Amended July 12, 2002)(Amended October 3, 2003)
(Amended January 7, 2005)(Amended October 6, 2017)

## RULE 1168.    ADHESIVE AND SEALANT APPLICATIONS

(a)    Purpose and Applicability

The purpose of this rule is to reduce emissions of volatile organic compounds (VOCs), toxic air contaminants, and stratospheric ozone-depleting compounds from the application of adhesives, adhesive primers, sealants, and sealant primers. This rule applies to any person who uses, sells, stores, supplies, distributes, offers for sale, or manufactures for sale any adhesives, adhesive primers, sealants, or sealant primers, unless otherwise specifically exempted by this rule.

(b)    Definitions

For the purpose of this rule, the following definitions shall apply:

(1)    ACRYLIC is a thermoplastic polymer or a copolymer of acrylic acid, methacrylic acid, esters of these acids, or acrylonitrile.

(2)    ACRYLONITRILE-BUTADIENE-STYRENE (ABS) plastic is made by reacting monomers of acrylonitrile, butadiene, and styrene and is normally identified with an ABS marking.

(3)    ABS TO POLYVINYL CHLORIDE (PVC) TRANSITION CEMENT is Plastic Welding Cement used to join ABS and PVC building drains or building sewers.

(4)    ABS WELDING CEMENT is a Plastic Welding Cement that is used to join ABS pipe, fittings, and other system components, including, but not limited to, components for shower pan liner, drain, closet flange, and backwater valve systems.

(5)    ADHESIVE is any substance that is used to bond one surface to another surface by attachment.

(6)    ADHESIVE PRIMER is a film-forming material applied to a substrate, prior to the application of an adhesive or adhesive tape, to increase adhesion or film bond strength, promote wetting, or form a chemical bond with a subsequently applied adhesive.

1168 - 1

Rule 1168 (Cont.)                                          (Amended October 6, 2017)

(7)     ADHESIVE TAPE is a backing material coated with an adhesive, and includes, but is not limited to, drywall tape, heat sensitive tape, pressure-sensitive adhesive tape, and water-activated tape.

(8)     AEROSOL ADHESIVE is any adhesive packaged as an aerosol product in which the spray mechanism is permanently housed in a can designed for hand-held application where no ancillary hoses or spray equipment is used.

(9)     AEROSOL PRODUCT is a pressurized spray system that dispenses product ingredients by means of a propellant contained in a product or a product's container, or by means of a mechanically induced force. Aerosol Products do not include Pump Spray.

(10)    ARCHITECTURAL APPLICATION is the use of a regulated product on stationary structures, including mobile homes, and their appurtenances.

(11)    ARCHITECTURAL APPURTENANCE is any accessory to a stationary structure, including, but not limited to, hand railings; cabinets; bathroom and kitchen fixtures; fences; rain-gutters and down-spouts; window screens; lamp-posts; heating and air conditioning equipment; other mechanical equipment; large fixed stationary tools; signs; motion picture and television production sets; and concrete forms.

(12)    BIG BOX RETAILER is a physically large-chain retail outlet that is classified by the U.S. Department of Labor under North American Industry Classification System code 444110: Home Centers or identified in a list maintained by the Executive Officer.

(13)    BUILDING ENVELOPE is the exterior and demising partitions of a building that enclose conditioned space.

(14)    BUILDING ENVELOPE MEMBRANE ADHESIVES are used to adhere membranes applied to the building envelope to provide a barrier to air or vapor leakage through the building envelope that separates conditioned from unconditioned spaces. Building Envelope Membranes are applied to diverse materials, including, but not limited to, concrete masonry units (CMU), oriented stranded board (OSB), gypsum board, and wood substrates.

(15)    CARPET PAD ADHESIVE is an adhesive used for the installation of a carpet pad (or cushion) beneath a carpet.

(16)    CERAMIC, GLASS, PORCELAIN, AND STONE TILE ADHESIVE is an adhesive used for the installation of tile products.

**Rule 1168 (Cont.)**                                    **(Amended October 6, 2017)**

(17)    CHLORINATED POLYVINYL CHLORIDE (CPVC) plastic is a polymer of the chlorinated polyvinyl monomer that contains 67% chlorine and is normally identified with a CPVC marking.

(18)    CPVC WELDING CEMENT is a Plastic Welding Cement that is used to join CPVC pipe, fittings, and other system components, including, but not limited to, components for shower pan liner, drain, closet flange, and backwater valve systems.

(19)    CLEAR, PAINTABLE, AND IMMEDIATELY WATER-RESISTANT SEALANT is a compound with adhesive properties that contains no appreciable level of opaque fillers or pigments; transmits most or all visible light through itself when cured; is capable of being painted; is immediately resistant to precipitation upon application; and must meet the following criteria:

    (A)    Clarity of 15 turbidity units or less per ASTM D7315 - Determination of Turbidity Above 1 Turbidity Unit (TU) in Static Mode as manufactured and packaged;

    (B)    Color of Gardner 0 as tested by ASTM D1544 - Standard Test Method for Color of Transparent Liquids (Gardner Color Scale) or Platinum-Cobalt Color of 50 or less using ASTM D1209 - Standard Test Method for Color of Clear Liquids (Platinum-Cobalt Scale) as manufactured and packaged; and

    (C)    Compatible with paint per ASTM C1520 Standard Guide for Paintability of Latex Sealants.

(20)    COMPUTER DISKETTE MANUFACTURING is the process where the fold-over flaps are glued to the body of a vinyl jacket.

(21)    CONTACT ADHESIVE is an adhesive applied to two separate surfaces, allowed to dry before the two surfaces are placed in contact with each other, and forms an immediate bond after both adhesive-coated surfaces are placed in full contact with each other.

(22)    CONSUMER PRODUCTS REGULATION is the regulation implemented by the California Air Resources Board (CARB) under Title 17 of the California Code of Regulations, Section 94507, et. seq.

(23)    COVE BASE is a flooring trim unit, generally made of vinyl or rubber, having a concave radius on one edge and a convex radius on the opposite edge, that is used in forming a junction between the bottom wall course and the floor, to form an inside corner.

**1168 - 3**

Rule 1168 (Cont.)                                    (Amended October 6, 2017)

(24)   CYANOACRYLATE ADHESIVE is an acrylic adhesive that contains ethyl, methyl, methoxymethyl or other functional groupings of cyanoacrylate.

(25)   DIP COAT is a method of application to a substrate by submersion into, and removal from, a bath.

(26)   DISTRIBUTION CENTER is a warehouse or other specialized building, which is stocked with products (goods), to be redistributed to retailers, wholesalers, or directly to end-users.

(27)   DRY WALL ADHESIVE is an adhesive used during the installation of gypsum dry wall to studs or solid surfaces.

(28)   EDGE GLUE is an adhesive applied to the edge of multi-sheet carbonless forms prior to being fanned apart after drying.

(29)   ELECTROSTATIC APPLICATION is a spray method where the atomized droplets are charged and subsequently deposited on the substrate by electrostatic attraction.

(30)   ENERGY CURABLE ADHESIVES AND SEALANTS are single-component reactive products that cure upon exposure to visible-light, ultra-violet light, or to an electron beam.  The VOC content of thin film Energy Curable Adhesives and Sealants may be determined by manufacturers using ASTM Test Method 7767 Standard Test Method to Measure Volatiles from Radiation Curable Acrylate Monomers, Oligomers, and Blends and Thin Coatings Made from Them.

(31)   EXEMPT COMPOUNDS are as defined in Rule 102 – Definition of Terms.

(32)   FACILITY means any permit unit or grouping of permit units or other air contaminant-emitting activities which are located on one or more contiguous properties within the District, in actual physical contact or separated solely by a public roadway or other public right-of-way, and are owned or operated by the same person (or by persons under common control).  Such above-described groupings, if not contiguous, but connected only by land carrying a pipeline, shall not be considered one facility.

(33)   FIBERGLASS is fine filaments of glass.

(34)   FLOW COAT is an application method that coats an object by flowing a stream of regulated product over the object and draining off any excess product.

(35)   FOAM INSULATION is an expanding foam that is sprayed into ceiling or wall cavities to provide thermal resistance or to minimize air infiltration.

1168 - 4

**Rule 1168 (Cont.)**                                    **(Amended October 6, 2017)**

(36)    FOAM SEALANT is a foam used to fill and form a durable, airtight, water-resistant seal to common building substrates, such as wood, brick, concrete, foam board, and plastic.

(37)    GRAMS OF VOC PER LITER OF REGULATED PRODUCT, LESS WATER AND LESS EXEMPT COMPOUNDS is the weight of VOC per combined volume of VOC and product solids, and can be calculated by the following equation:

Grams of VOC per Liter of Regulated Product, Less Water and Less

$$\text{Exempt Compounds} = \frac{W_s - W_w - W_{es}}{V_m - V_w - V_{es}}$$

Where:    $W_s$    =    weight of volatile compounds, in grams

$W_w$    =    weight of water, in grams

$W_{es}$    =    weight of exempt compounds, in grams

$V_m$    =    volume of material, in liters

$V_w$    =    volume of water, in liters

$V_{es}$    =    volume of exempt compounds, in liters

For reactive products, the VOC content is determined after curing. The grams of VOC per liter of any regulated product, except a low-solids product, shall be calculated by the following equation:

Grams of VOC per Liter of Regulated Product, Less Water and Less

$$\text{Exempt Compounds} = \frac{W_{rs} - W_{rw} - W_{res}}{V_{rm} - V_{rw} - V_{res}}$$

Where:    $W_{rs}$    =    weight of volatile compounds not consumed during curing, in grams

$W_{rw}$    =    weight of water not consumed during curing, in grams

$W_{res}$    =    weight of exempt compounds not consumed during curing, in grams

$V_{rm}$    =    volume of material prior to reaction, in liters

$V_{rw}$    =    volume of water not consumed during curing, in liters

$V_{res}$    =    volume of exempt compounds not consumed during curing, in liters

**1168 - 5**

**Rule 1168 (Cont.)**                          **(Amended October 6, 2017)**

(38)     GRAMS OF VOC PER LITER OF MATERIAL is the weight of VOC per volume of material, to be used for a low-solids product, and can be calculated by the following equation:

$$\text{Grams of VOC per Liter of Material} = \frac{W_s - W_w - W_{es}}{V_m}$$

Where:     $W_s$    =    weight of volatile compounds, in grams

                 $W_w$    =    weight of water, in grams

                 $W_{es}$    =    weight of exempt compounds, in grams

                 $V_m$    =    volume of material, in liters

For reactive products, the VOC content is determined after curing.

(39)     GROUT is a cement-based sealant formulated to fill or seal gaps, including those associated with, but not limited to, tile installations.

(40)     HAND APPLICATION METHODS is the application of a regulated product using hand held equipment. Such equipment includes paint brush, hand roller, trowel, spatula, dauber, rag, sponge, and mechanically- and/or pneumatic-driven syringe provided there is no atomization of the materials.

(41)     HIGH-VOLUME, LOW-PRESSURE (HVLP) SPRAY is equipment used to apply a regulated product by means of a spray gun that is designed to be operated and that is operated between 0.1 and 10 pounds per square inch gauge (psig) air pressure measured dynamically at the center of the air cap and at the air horns.

(42)     INDOOR FLOOR COVERING ADHESIVE is an adhesive used during the installation of a carpet or indoor flooring that is in an enclosure and is not exposed to ambient weather conditions during normal use.

(43)     LOW-SOLIDS is any regulated product that contains less than one pound of solids per gallon of material (or 120 grams of solids per liter of material).

(44)     MAINTENANCE is a routine process to keep equipment and machinery in working order or to prevent breakdowns.

(45)     MANUFACTURING is the use of tools and labor to make things for sale.

(46)     MARINE APPURTENANCES include, but are not limited to, a wood boardwalk, deck, dock, fender, lock gate, or other wooden structure specified for the marine environment.

(47)     MARINE DECK SEALANT is any sealant that is applied to wooden marine decks and their appurtenances and is specified and used exclusively for the marine environment.

1168 - 6

Rule 1168 (Cont.)                                      (Amended October 6, 2017)

(48)     MARINE DECK SEALANT PRIMER is any sealant primer that is applied
to wooden marine decks and their appurtenances and is specified and used
exclusively for the marine environment.

(49)     MODIFIED BITUMINOUS PRIMER consist of bituminous materials, and
a high flash solvent used to prepare a surface by (1) improving the adhesion
and (2) absorbing dust from the surface for adhesive, or flashing cement
bitumen membrane.

(50)     MODIFIED BITUMINOUS MATERIALS are materials obtained from
natural deposits of asphalt or residues from the distillation of crude oil
petroleum or coal which consist mainly of hydrocarbons, and include, but
are not limited to, asphalt, tar, pitch, and asphalt tile that are soluble in
carbon disulfide.

(51)     MULTI-PURPOSE CONSTRUCTION ADHESIVE is any adhesive to be
used for the installation or repair of various construction materials,
including, but not limited to, drywall, subfloor, panel, fiberglass reinforced
plastic (FRP), ceiling tile, and acoustical tile.

(52)     NON-STAINING PLUMBING PUTTY is a non-staining sealant
formulated for use on natural surface materials that remains flexible and
creates a waterproof seal when setting plumbing fixtures.

(53)     OUTDOOR FLOOR COVERING ADHESIVE is an adhesive used during
the installation of carpet or floor covering that is not in an enclosure and is
exposed to ambient weather conditions during normal use.

(54)     OZONE-DEPLETING COMPOUND is as defined in Rule 102.

(55)     PANEL ADHESIVE is an adhesive used for the installation of plywood,
pre-decorated hardboard (or tileboard), FRP, and similar pre-decorated or
non-decorated panels to studs or solid surfaces.

(56)     PERCENT VOC BY WEIGHT is the ratio of the weight of the VOC to the
weight of the material, expressed as a percentage of VOC by weight. The
percent VOC by weight can be calculated as follows:

$$\% \text{ VOC weight} = \frac{W_v}{W} \times 100$$

Where:   $W_v$   =   weight of the VOCs, in grams
         $W$     =   weight of material, in grams

(57)     PERSON is as defined in Rule 102.

1168 - 7

Rule 1168 (Cont.)                               (Amended October 6, 2017)

(58)   PLASTIC ADHESIVE PRIMER is a material applied to CPVC and PVC plastic to prepare joining surfaces for the application of CPVC or PVC welding cements.

(59)   PLASTIC WELDING CEMENT is the use of adhesives made of resins and solvents which are used to dissolve the surfaces of plastic, except ABS, CPVC, and PVC plastic, to form a bond between mating surfaces.

(60)   PLASTIC FOAM is a foam constructed of plastics.

(61)   PLASTICS are synthetic materials chemically formed by the polymerization of organic (carbon-based) substances. Plastics are usually compounded with modifiers, extenders, and/or reinforcers. They are capable of being molded, extruded, cast into various shapes and films, or drawn into filaments and are used to produce pipe, solid sheet, film, or bulk products.

(62)   POLYCARBONATE is a thermoplastic resin derived from bisphenol A and phosgene, a linear polyester of carbonic acid, dihydroxy compound and any carbonate diester, or by ester interchange.

(63)   POLYETHYLENE TEREPHTHALATE (PET, PETE) is a thermoplastic polyester formed from ethylene glycol by direct esterification or by catalyzed ester exchange between ethylene glycol and dimethyl terephthalate.

(64)   POLYETHYLENE TEREPHTHALATE GLYCOL (PETG) is a glycol modified polyethylene terephthalate.

(65)   POLYVINYL CHLORIDE (PVC) plastic is a polymer of the vinyl chloride monomer that contains 57 percent chlorine.

(66)   POROUS MATERIAL is a substance which has tiny openings, often microscopic, in which fluids may be absorbed or discharged. Such materials include, but are not limited to, wood, fabric, paper, corrugated paperboard, and plastic foam.

(67)   POTABLE WATER ARCHITECTURAL SEALANT is a sealant used in water treatment or water distribution applications required to comply with NSF/ANSI Standard 61: Drinking Water System Components – Health Effects.

(68)   PRESSURE SENSITIVE ADHESIVE is an adhesive, typically coated on backings or release liners that forms a bond when pressure is applied, without the need for solvent, water, or heat.

1168 - 8

**Rule 1168 (Cont.)**                              **(Amended October 6, 2017)**

(69)      PRIVATE LABELER is the person, company, firm, or establishment (other than the toll manufacturer) identified on the label of a regulated product.

(70)      PUMP SPRAY is a packaging system in which the product ingredients within the container are not under pressure and in which the product is expelled only while a pumping action is applied to a button, trigger, or other actuator.

(71)      PVC WELDING CEMENT is a Plastic Welding Cement that is used to join PVC pipe, fittings, and other system components, including, but not limited to, components for shower pan liner, drain, closet flange, and backwater valve systems.

(72)      QUANTITY AND EMISSIONS REPORT (QER) is the report specified in subparagraph (f)(2).

(73)      REACTIVE PRODUCTS are regulated products composed, in part, of monomers that become integral parts of the cured product through chemical reaction. Reactive Products include, but are not limited to, polyurethane and two-component regulated products.

(74)      REGULATED PRODUCT is an adhesive, adhesive primer, sealant, or sealant primer subject to this rule.

(75)      REINFORCED PLASTIC COMPOSITE is a composite material consisting of plastic reinforced with fibers.

(76)      REPAIR is an operation or activity to return a damaged object or an object not operating properly, to good condition.

(77)      ROADWAY SEALANT is any sealant to be applied to streets, highways, and other surfaces, including, but not limited to, curbs, berms, driveways, and parking lots.

(78)      ROLL COATER is a series of mechanical rollers that form a thin film on the surface roller, which is applied to a substrate by moving the substrate underneath the roller.

(79)      RUBBER is any natural or manmade rubber-like substrate, and includes, but is not limited to, styrene-butadiene, polychloroprene (neoprene), butyl, nitrile, chlorosulfonated polyethylene, and ethylene propylene diene terpolymer.

(80)      RUBBER FLOORING ADHESIVE is an adhesive that is used for the installation of flooring material in which both the back and top surfaces are made of synthetic rubber, and which may be in sheet or tile form.

Rule 1168 (Cont.)                                    (Amended October 6, 2017)

(81)   RUBBER VULCANIZATION ADHESIVE is a reactive adhesive used for rubber-to-substrate bonding achieved during vulcanization of the rubber elastomer at temperatures greater than 250°F. Vulcanized rubber adhesive does not include bonding previously vulcanized rubber.

(82)   SEALANT is any material with adhesive properties that is designed to fill, seal, waterproof, or weatherproof gaps or joints between two surfaces. Sealants include caulks.

(83)   SEALANT PRIMER is any film-forming product applied to a substrate, prior to the application of a sealant, to enhance the bonding surface.

(84)   SHOE REPAIR, LUGGAGE AND HANDBAG ADHESIVE is an adhesive used to repair worn, torn, or otherwise damaged uppers, soles, and heels of shoes, or for making repairs to luggage and handbags.

(85)   SINGLE PLY ROOF MEMBRANE ADHESIVE is any adhesive sealant to be used for the installation or repair of single ply roof membrane. Installation includes, but is not limited to, attaching the edge of the membrane to the edge of the roof and applying flashings to vents, pipes, or ducts that protrude through the membrane.

(86)   SINGLE PLY ROOF MEMBRANE SEALANT is any sealant used for the installation or repair of single ply roof membrane.

(87)   SOLVENT WELDING is the softening of the surfaces of two substrates by wetting them with solvents and/or adhesives, and joining them together through a chemical and/or physical reaction(s) to form a fused union.

(88)   SPECIAL PURPOSE CONTACT ADHESIVE is a contact adhesive that is used to bond all of the following substrates to any surface: melamine covered board, metal, unsupported vinyl, Teflon, ultra-high molecular weight polyethylene, rubber, and wood veneer 1/16 inch or less in thickness.

(89)   STRUCTURAL GLAZING ADHESIVE is any adhesive to be used to adhere glass, ceramic, metal, stone, or composite panels to exterior building frames.

(90)   STRUCTURAL WOOD MEMBER ADHESIVE is an adhesive used for the construction of any load bearing joints in wooden joists, trusses, or beams.

(91)   SUBFLOOR ADHESIVE is an adhesive used for the installation of subflooring material over floor joists.

(92)   THIN METAL LAMINATING ADHESIVE is an adhesive for bonding multiple layers of metal to metal or metal to plastic in the production of

1168 - 10

**Rule 1168 (Cont.)**                                          **(Amended October 6, 2017)**

electronic or magnetic components in which the thickness of the bond line(s) is less than 0.25 mil.

(93)    TIRE REPAIR is the expanding of a hole, tear, fissure, or blemish in a tire casing by grinding or gouging, applying adhesive, and filling the hole or crevice with rubber.

(94)    TIRE TREAD ADHESIVE is any adhesive to be applied to the back of precured tread rubber and to the casing and cushion rubber, or to be used to seal buffed tire casings to prevent oxidation while the tire is being prepared for a new tread.

(95)    TOLL MANUFACTURER is a regulated product manufacturer who produces regulated product for a private labeler.

(96)    TOP AND TRIM ADHESIVE is an adhesive used during the installation of automotive and marine trim, including, but not limited to, headliners, vinyl tops, vinyl trim, sunroofs, dash covering, door covering, floor covering, panel covering, and upholstery.

(97)    TOXIC AIR CONTAMINANT (TAC) is an air pollutant which may cause or contribute to an increase in mortality or serious illness, or which may pose a present or potential hazard to human health as listed by the Office of Environmental Health Hazard Assessment.

(98)    TRAFFIC MARKING TAPE is preformed reflective tape that is applied to public streets, highways, and other surfaces, including, but not limited to, curbs, berms, driveways, and parking lots.

(99)    TRAFFIC MARKING TAPE ADHESIVE PRIMER is any adhesive primer that is applied to surfaces prior to installation of traffic marking tape.

(100)   TRANSFER EFFICIENCY is the ratio of the weight or volume of the regulated product solids adhering to an object to the total weight or volume, respectively, of the regulated product solids dispensed in the application process, expressed as a percentage.

(101)   VINYL COMPOSITIONS TILE (VCT) is a material made from thermoplastic resins, fillers, and pigments.

(102)   VEHICLE GLASS ADHESIVE PRIMER is a primer applied to vehicle glass or to the frame of a vehicle prior to installation or repair of the vehicle glass using an adhesive or sealant to improve adhesion to the pinch weld. For the purposes of this definition, a vehicle is a mobile machine that transports passengers or cargo, and includes, but is not limited to, automobiles, trucks, buses, motorcycles, trains, ships, and boats.

**1168 - 11**

Rule 1168 (Cont.)                                        (Amended October 6, 2017)

      (103)   VOLATILE ORGANIC COMPOUND (VOC) is as defined in Rule 102.

      (104)   WATERPROOF RESORCINOL GLUE is a two-part, resorcinol-resin-based adhesive used in applications where the bond line must be resistant to conditions of continuous immersion in fresh or salt water.

      (105)   WOOD FLOORING ADHESIVE is an adhesive used to install a wood floor surface, which may be in the form of parquet tiles, wood planks, or strip-wood.

(c)    Requirements

    (1)   A person shall not use, sell, store, supply, distribute, offer for sale, or manufacture regulated products subject to the provisions of this rule, which contain VOC in excess of the limits specified in Table 1 below:

### Table 1 – Regulated Product Categories and VOC Limits

| Category | VOC Limits (g/L)[1] | | | |
|---|---|---|---|---|
| | Current | Upon Adoption | 1/1/2019 | 1/1/2023 |
| **Adhesives** | | | | |
| Architectural Applications | | | | |
|   Building Envelope Membrane Adhesive | 250 | | | |
|   Carpet Pad Adhesive | 50 | | | |
|   Ceramic Glass, Porcelain, & Stone Tile Adhesive | 65 | | | |
|   Cove Base Adhesive | 50 | | | |
|   Dry Wall and Panel Adhesive | 50 | | | |
|   Multi-Purpose Construction Adhesives | 70 | | | |
| Roofing | | | | |
|   Single Ply Roof Membrane Adhesive | 250 | | | 200[2] |
|   All Other Roof Adhesives | 250 | | | 200[2] |
| Rubber Floor Adhesive | 60 | | | |
| Structural Glazing Adhesive | 100 | | | |
| Structural Wood Member Adhesive | 140 | | | |
| Subfloor Adhesive | 50 | | | |
| VCT and Asphalt Tile Adhesive | 50 | | | |
| Wood Flooring Adhesive | 100 | | | 20 |
| All Other Indoor Floor Covering Adhesives | 50 | | | |
| All Other Outdoor Floor Covering Adhesives | 150 | | 50 | |

1168 - 12

Rule 1168 (Cont.)                      (Amended October 6, 2017)

| Category | VOC Limits (g/L)[1] | | | |
|---|---|---|---|---|
| | Current | Upon Adoption | 1/1/2019 | 1/1/2023 |
| Computer Diskette Manufacturing Adhesive | 350 | | | |
| Contact Adhesive | 80 | | | |
| Edge Glue Adhesive | 250 | | | |
| Plastic Welding Cement | | | | |
|   ABS Welding Cement | 325 | | | |
|   ABS to PVC Transition Cement | 510 | | | 425[2] |
|   CPVC Welding Cement | 490 | | | 400[2] |
|   PVC Welding Cement | 510 | | | 425[2] |
|   All Other Plastic Welding Cements | 250 | | 100 | |
| Rubber Vulcanization Adhesive | 250 | 850 | | 250 |
| Special Purpose Contact Adhesive | 250 | | | |
| Thin Metal Laminating Adhesive | 780 | | | |
| Tire Tread Adhesive | 100 | | | |
| Top and Trim Adhesive | 250 | 540 | | 250[2] |
| Waterproof Resorcinol Glue | 250 | | 170 | |
| All Other Adhesives | 250 | | | |
| Substrate Specific Adhesives | | | | |
| Metal | 30 | | | |
| Plastic Foams | 50 | | | |
| Porous Material (except wood) | 50 | | | |
| Wood | 30 | | | |
| Fiberglass | 80 | | | |
| Reinforced Plastic Composite | 250 | | 200 | |
| Sealants | | | | |
| Architectural Applications | | | | |
|   Clear, Paintable, and Immediately Water-Resistant Sealant | 250 | 380 | | 250 |
|   Foam Insulation | 250 | | | 50[3] |
|   Foam Sealant | 250 | | | 50[3] |
|   Grout | 250 | 65 | | |
|   Roadway Sealant | 250 | | | |
|   Non-Staining Plumbing Putty | 250 | 150 | | 50 |
|   Potable Water Sealant | 250 | 100 | | |
|   Roofing | | | | |
|     Single Ply Roof Membrane Sealant | 450 | | | 250[2] |
|     All Other Roof Sealants | 300 | | | 250[2] |

1168 - 13

Rule 1168 (Cont.)          (Amended October 6, 2017)

| Category | VOC Limits (g/L)[1] | | | |
| --- | --- | --- | --- | --- |
| | Current | Upon Adoption | 1/1/2019 | 1/1/2023 |
| All Other Architectural Sealants | 250 | | 50 | |
| Marine Deck Sealant | 760 | | | |
| All Other Sealants | 420 | | | 250 |
| **Adhesive Primers** | | | | |
| Plastic | 550 | | | |
| Pressure Sensitive | 250 | 785 | | |
| Traffic Marking Tape | 150 | | | |
| Vehicle Glass | 250 | 700 | | |
| All Other Adhesive Primers | 250 | | | |
| **Sealant Primers** | | | | |
| Architectural Applications | | | | |
|   Non Porous | 250 | | | |
|   Porous | 775 | | | |
| Marine Deck | 760 | | | |
| Modified Bituminous | 500 | | | |
| All Other Sealant Primers | 750 | | | |

1. VOC limits are expressed as grams of VOC per liter of regulated product, less water and less exempt compounds, as defined in paragraph (b)(37) except for low-solid regulated products where the VOC limit is expressed in grams per liter of material as defined in paragraph (b)(38).

2. Technology assessment will be conducted in 2022 and the Executive Officer shall report on the results of the technology assessment to the Stationary Source Committee prior to the implementation date.

3. Technology assessment will be conducted in 2020 and the Executive Officer shall report on the results of the technology assessment to the Stationary Source Committee prior to the implementation date.

    (2)    Regulated Product Categorization

        (A)    Adhesives not regulated by a specific adhesive category, shall be limited to the VOC limits listed under the Substrate Specific Adhesive category in Table 1, if anywhere on the regulated product container, on any sticker or label affixed thereto, or in any sales or advertising literature, any representation is made that the regulated product may be used, or is suitable for use, on that substrate. If the adhesive is used to bond dissimilar substrates together, the higher Substrate Specific Adhesive VOC limit shall apply.

1168 - 14

Rule 1168 (Cont.)                                      (Amended October 6, 2017)

    (B)    If anywhere on the regulated product container, on any sticker or label affixed thereto, or in any sales or advertising literature, any representation is made that the regulated product may be used, or is suitable for use, as a regulated product for which a VOC standard in a specific category is specified in Table 1, then the lowest VOC standard shall apply.  This provision does not apply to Substrate Specific Adhesives.

(3)    Sell-Through and Use-Through Provision

Any regulated product that is manufactured prior to the effective date of the applicable limit specified in Table 1 and that has a VOC content above that limit (but not above the limit in effect on the date of manufacture), may be sold, supplied, or offered for sale for up to three years after the specified effective date and used up to four years after the specified effective date.

(4)    All regulated product containers shall be closed when not in use. Any VOC-laden application tools, such as a brush, pad, rag, cloth, or paper, used in the regulated product application, shall be stored and disposed of in closed containers when not in use.

(5)    Solvent cleaning of application equipment, parts, products, tools, machinery, equipment, general work areas, and the storage and disposal of VOC-containing materials, used in cleaning operations shall be conducted pursuant to Rule 1171 - Solvent Cleaning Operations.

(6)    Transfer Efficiency

A person shall not apply VOC-containing regulated product unless the regulated product is applied with properly operating equipment in accordance with operating procedures specified by either the equipment manufacturer or by use of one of the following methods:

    (A)    Electrostatic application; or

    (B)    Flow coat; or

    (C)    Dip coat; or

    (D)    Roll coat; or

    (E)    High-Volume, Low-Pressure (HVLP) spray; or

    (F)    Hand application methods; or

    (G)    Such other application methods as are demonstrated to the Executive Officer to be capable of achieving a transfer efficiency equivalent to or better than the method listed in subparagraph

1168 - 15

**Rule 1168 (Cont.)**          **(Amended October 6, 2017)**

            (c)(6)(E) and for which prior written approval of the Executive Officer has been obtained.

  (7)     Control Devices

A person may comply with the provisions of paragraphs (c)(1), or (c)(6), or both, by using approved air pollution control equipment to apply a regulated product, provided:

    (A)     The control device reduces VOC emissions from an emission collection system by at least 95 percent by weight or the output of the air pollution control device is no more than 50 ppm VOC by volume calculated as carbon with no dilution; and

    (B)     The owner/operator demonstrates that the emission collection system collects at least 90 percent by weight of the VOC emissions generated by the sources of VOC emissions.

  (8)     A person may comply with the provisions of paragraph (c)(1) by means of an Alternative Emission Control Plan to apply a regulated product pursuant to Rule 108.

  (9)     The VOC content of regulated products that are applied with the use of refillable pressurized spray system are subject to the VOC limits of this rule.

  (10)    Except as provided in subdivision (i) and paragraphs (c)(3), (c)(7), and (c)(8), a person shall not store regulated products which contain VOC in excess of the limits specified in paragraph (c)(1).

  (11)    Containers used for mixing VOC-containing regulated products shall be kept closed at all times except when in use or when product is being added or removed.

(d)     Recordkeeping Requirements

Records of regulated product usage shall be maintained pursuant to Rule 109.

(e)     Test Methods

  (1)     The VOC content of regulated products shall be determined by the South Coast Air Quality Management District (SCAQMD) using the applicable test methods below. When a test method specifies it is inapplicable to a product category, it shall not be used for that inapplicable category. The Executive Officer will develop a Guidance Document to determine which test method will be used when two or more applicable test methods can be

1168 - 16

Rule 1168 (Cont.)                           (Amended October 6, 2017)

used to demonstrate compliance with the rule. The selected test method will be based on product type, chemistry, and VOC content.

(A)   VOC content may be determined by USEPA Reference Method 24 (Determination of Volatile Matter Content, Water Content, Density Volume Solids, and Weight Solids of Surface Coating, Code of Federal Regulations Title 40, Appendix A, utilizing Procedure B of ASTM Method D2369).

(B)   VOC content may be determined by Method 304 (Determination of Volatile Organic Compounds (VOC) in Various Materials) in the SCAQMD's "Laboratory Methods of Analysis for Enforcement Samples" manual.

(C)   Exempt compound content shall be determined by Method 303 in the SCAQMD's "Laboratory Methods of Analysis for Enforcement Samples" or ASTM Method D4457.

(D)   VOC content may be determined by Method 313 (Determination of Volatile Organic Compounds VOC by Gas Chromatography-Mass Spectrometry) in the SCAQMD's "Laboratory Methods of Analysis for Enforcement Samples" manual.

(E)   VOC content may be determined by ASTM Test Method 6886 (Standard Test Method for Determination of the Weight Percent Individual Volatile Organic Compounds in Waterborne Air-Dry Coatings by Gas Chromatography).

(F)   The VOC content of PVC, CPVC, ABS, ABS to PVC Transition Welding Cements, and plastic adhesive primers shall be determined by Method 316A in the SCAQMD's "Laboratory Methods of Analysis for Enforcement Samples."

(G)   The VOC content of cyanoacrylate adhesives shall be determined by Method 316B in the SCAQMD's "Laboratory Methods of Analysis for Enforcement Samples."

(H)   The VOC content of reactive adhesives may be determined by Appendix A to Subpart PPPP of 40 CFR Part 63—Determination of Weight Volatile Matter Content and Weight Solids Content of Reactive Adhesives.

(2)   The efficiency of the control device and the VOC content measured and calculated as carbon in the control device exhaust gases shall be determined by USEPA'S Test Method 18, or CARB Method 422 for the determination

1168 - 17

**Rule 1168 (Cont.)**                                    **(Amended October 6, 2017)**

of emissions of Exempt Compounds and USEPA's Test Methods 25, 25A, SCAQMD's Method 25.1, or SCAQMD Test Method 25.3. (Determination of Total Gaseous Non-Methane Organic Emissions as Carbon) for the determination of total organic compound emissions. Emissions determined to exceed any limits established by this rule through the use of any of the above-referenced test methods shall constitute a violation of the rule.

(3)   Viscosity shall be determined by ASTM D 1084– Standard Test Methods for Viscosity of Adhesives.

(4)   The following classes of compounds: cyclic, branched, or linear, completely fluorinated alkanes; cyclic, branched, or linear, completely fluorinated ethers with no unsaturations; cyclic, branched, or linear, completely fluorinated tertiary amines with no unsaturations; and sulfur-containing perfluorocarbons with no unsaturations and with sulfur bonds only to carbon and fluorine, will be analyzed as exempt compounds for compliance with subdivision (c), only at such time as manufacturers specify which individual compounds are used in the regulated product formulations and identify the test methods, which, prior to such analysis, have been approved by the USEPA and the SCAQMD, that can be used to quantify the amounts of each exempt compound.

(5)   Equivalent Test Methods

Other test methods determined to be equivalent after review by the Executive Officer, CARB, and the USEPA, and approved in writing by the District Executive Officer, may also be used.

(6)   All test methods referenced in this subdivision shall be the version most recently approved by the appropriate governmental entities.

(f)   Administrative Requirements

(1)   Regulated products manufactured after January 1, 2019, shall display the following:

(A)   Each container shall display the VOC content of the regulated product, as recommended for application. VOC content shall be displayed as grams of VOC per liter of regulated product, excluding water and exempt compounds, or grams of VOC per liter of material for low-solids products. The VOC content shall be determined by calculation based on product formulation or laboratory analysis using the applicable test method in subdivision (e).

**1168 - 18**

Rule 1168 (Cont.)                                    (Amended October 6, 2017)

        (i)     Regulated products subject to both the provisions of this rule and the Consumer Products Regulation may display the VOC content as percent VOC provided the regulated product has supplemental product documentation published from the manufacturer that displays the VOC content in grams of VOC per liter of regulated product.

(B)     Each container or an associated product data sheet shall display a statement of the manufacturer's recommendations regarding thinning, reducing, or mixing with any other VOC containing material, if applicable. Mixing recommendations shall specify a ratio which results in a compliant, as applied, product.

(C)     Each container shall display the date of manufacture of the contents or a date code indicating the date of manufacture. A manufacturer utilizing a date code shall file an explanation of each date code with the District Executive Officer.

(D)     Each container of all Top and Trim Adhesives shall include the statement "For Top and Trim Uses Only" prominently displayed.

(E)     Each container of all Rubber Vulcanization Adhesives shall include the statement "For Rubber Vulcanization Adhesive Uses Only" prominently displayed.

(F)     Each container of all Pressure Sensitive Adhesive Primers shall include the statement "For Pressure Sensitive Adhesive Primer Uses Only" prominently displayed.

(G)     Each container of all ABS to PVC Transition Cements shall include the statement "For ABS to PVC Transition Uses Only" prominently displayed.

(2)    Reporting Requirements

    (A)    Reporting Timeline

        A Quantity and Emission Report (QER) shall be submitted according to the reporting timeline identified in Table 2 below:

        (i)     Every three years, from the years 2019 to 2025.

        (ii)    Every five years, thereafter, until and including 2040.

**1168 - 19**

Rule 1168 (Cont.)                                    (Amended October 6, 2017)

**Table 2: Reporting Timeline**

| Reporting Deadlines | | |
|---|---|---|
| Manufacturers & Private Labelers | Big Box Retailers & Distribution Centers | Reported Years |
| September 1, 2019 | May 1, 2019 | 2017, 2018 |
| September 1, 2022 | May 1, 2022 | 2020, 2021 |
| September 1, 2025 | May 1, 2025 | 2023, 2024 |
| September 1, 2030 | May 1, 2030 | 2028, 2029 |
| September 1, 2035 | May 1, 2035 | 2033, 2034 |
| September 1, 2040 | May 1, 2040 | 2038, 2039 |

(B)     General QER

A manufacturer or private labeler of regulated products shall submit to the District a QER of regulated product sales into or within the District according to the schedule in Table 2.  The report shall include the following information:

(i)     Product manufacturer (as listed on the label);

(ii)    Product name and code;

(iii)   Applicable Rule 1168 category;

(iv)    The grams of VOC per liter of regulated product (less water and exempt solvents);

(v)     The grams of VOC per liter of material;

(vi)    Whether the product is waterborne or solvent-based;

(vii)   Total annual volume sold into or within the District, including products sold through distribution centers located within or outside the District, reported in gallons for all container sizes;

(viii)  For any regulated product with VOC content higher than the applicable limit in Rule 1168, an indication whether the product has been sold under any of the following provision of this rule:

(A)     Sell-through provision;

(B)     Low-Solids product;

(C)     Exempted under subdivision (i);

(D)     Complying with subparagraph (c)(7) – Control Device ; or

1168 - 20

Rule 1168 (Cont.)                           (Amended October 6, 2017)

(E)     Complying with subparagraph (c)(8) – Alternative Emission Control.

(C)     Aerosol QER

The manufacturer or private labeler of aerosol adhesives and aerosol adhesive primers shall submit to the District a QER of aerosol adhesive and aerosol adhesive primer sales into or within the District according to the schedule in Table 2. The report shall include the following information:

(i)     Product manufacturer (as listed on the label);

(ii)    Product name and code;

(iii)   Percent VOC by weight;

(iv)    Total weight sold, including products sold through distribution centers located within or outside the District; and

(v)     Container size of product.

(D)     A corporate officer of the manufacturer or private labeler of regulated products, who previously reported under (f)(2)(B) and (f)(2)(C), that had no distribution or sales into or within the District for the specified reporting years in Table 2, must certify that fact in a letter and on company letterhead by the reporting deadline specified in Table 2.

(i)     A manufacturer or private labeler of regulated products that has no intention to sell regulated products into or within the District in future years, must indicate that fact to be removed from future outreach efforts.

(ii)    A manufacturer or private labeler of regulated products who resumes sales of regulated product into or within the District, must adhere to the reporting requirements specified in (f)(2)(B) and (f)(2)(C).

(E)     Big Box Retailer or Distribution Center QER

A big box retailer or distribution center shall submit a QER to the regulated product manufacturer or private labeler, according to the schedule in Table 2. The QER must be electronically submitted, in a spreadsheet format and certified that all information reported is true and correct. The QER must contain the following information:

1168 - 21

Rule 1168 (Cont.)                                    (Amended October 6, 2017)

(i)     The manufacturer or private labeler's product name and code; and

(ii)    The quantity of each regulated product, aerosol adhesive, and aerosol adhesive primer distributed into the District.

(F)     Facilities Using the 55 Gallon Exemption

For each calendar year (January 1 through December 31) beginning in 2017, the facility using or purchasing regulated products under the provisions of paragraph (i)(5)(C) shall submit to the District by September 1 of the following calendar year, an annual report of regulated product used under the provisions of paragraph (i)(5)(C) within the District.   The report shall include the following information:

(i)     Product manufacturer (as listed on the label);

(ii)    Product name and code;

(iii)   The grams of VOC per liter of regulated product (less water and exempt solvents);

(iv)    The grams of VOC per liter of material;

(v)     Unit size of product;

(vi)    Total volume purchased, in gallons;

(vii)   The name and address of the company or retailer where the products were purchased.

(3)     Manufacturers, private labelers, or suppliers of regulated products shall maintain records to verify data used to determine VOC content in preparing their QER.  The records shall be maintained for three (3) years and made available upon request by the Executive Officer.  Such records shall include:

(A)     Laboratory reports; or

(B)     Formulation data used for VOC content calculations.

(4)     Confidentiality of Information

Subject to the provisions of the California Public Records Act (Gov Code §§ 6250-6276.48) information submitted to the Executive Officer may be designated as confidential.  The designation must be clearly indicated on the reporting form, identifying exactly which information is deemed confidential.  District guidelines require a detailed and complete basis for such claim in the event of a public records request.

**Rule 1168 (Cont.)**                    **(Amended October 6, 2017)**

(g)   Prohibition of Sales and Use

    (1)   Except as provided in subdivision (i), no person shall use, supply, sell, or offer for sale a regulated product in the District that contains chloroform, ethylene dichloride, methylene chloride, perchloroethylene, and trichloroethylene.

    (2)   On and after January 1, 2019, except as provided in subdivision (i), no person shall use, supply, sell, or offer for sale a regulated product in the District that contains Group II exempt compounds listed in Rule 102 in quantities greater than 0.1 percent by weight. This provision does not apply to cyclic, branched, or linear, completely methylated siloxanes.

(h)   Rule 442 Applicability

Any regulated product which is exempt from all or a portion of this rule shall comply with the provisions of Rule 442.

(i)   Exemptions

    (1)   The provisions of this rule shall not apply to:

        (A)   Adhesives, adhesive primers, sealants, or sealant primers, and associated application processes that are subject to Rule 1124;

        (B)   Adhesive tape;

        (C)   Regulated products shipped, supplied, or sold to persons for use outside the District; or

        (D)   Distribution centers that do not ship regulated products into or within the District.

    (2)   The provisions of this rule, except paragraphs (f)(2)(C), shall not apply to aerosol adhesives and primers dispensed from non-refillable aerosol spray systems.

    (3)   The provisions of this rule, except paragraphs (g)(1) and (g)(2), shall not apply to:

        (A)   Regulated products sold in quantities of one fluid ounce or less;

        (B)   Adhesives used to glue flowers to parade floats;

        (C)   Adhesives used to fabricate orthotics and prosthetics under a medical doctor's prescription; or

        (D)   Shoe repair, luggage, and handbag adhesives.

    (4)   The provisions of subdivision (c) shall not apply to:

**1168 - 23**

Rule 1168 (Cont.)                                    (Amended October 6, 2017)

(A)     Research and development programs and quality assurance labs. Records shall be maintained in accordance with the provisions of subdivision (d) of this rule; or

(B)     Solvent welding operations used in the manufacturing of medical devices.

(5)     The provisions of paragraph (c)(1) shall not apply to the following:

(A)     Adhesives used in tire repair;

(B)     Adhesives and/or adhesive application processes in compliance with Rules 1104, 1106, 1128, 1130, and 1130.1;

(C)     A facility that demonstrates that the total volume of noncompliant products is less than 55 gallons per facility per calendar year. A facility may not use this paragraph to exclude noncompliant adhesives used in architectural applications, contact adhesives, special purpose contact adhesives, and adhesives used on porous substrates. Effective January 1, 2019, a facility may not use this paragraph to exclude noncompliant rubber vulcanization adhesives and top and trim adhesives; or

(D)     Regulated products used in the field installation and repair of potable water linings and covers at water treatment, storage, or water distribution facilities.

(6)     The provisions of paragraph (c)(6) shall not apply to regulated products with a viscosity of 200 centipoise or greater.

(7)     The provisions of subdivision (f) shall not apply to thermoplastic hot melt adhesives or to regulated products offered for sale as a dry mix, containing no polymer, which are ready for use or only mixed with water prior to use, and include, but are not limited to, grouts, cements, and mortars.

(8)     The provisions of subdivisions (c) and (d), shall not apply to regulated products with a VOC content no more than 20 grams per liter, less water and less exempt compounds, or no more than 20 grams per liter material for low-solids regulated products.

(9)     Until January 1, 2021, the provision of paragraph (g)(1) and (g)(2) shall not apply to solvent welding formulations containing methylene chloride used to bond hard acrylic, polycarbonate, and polyethylene terephthalate glycol plastic fabrications, provided:

(A)     The concentration of methylene chloride in any solvent welding formulation does not exceed 60 percent by weight; and

1168 - 24

**Rule 1168 (Cont.)**                                   **(Amended October 6, 2017)**

(B)    The purchase of all solvent welding products does not exceed 20 gallons per calendar year at a single facility, as demonstrated by purchase records and invoices of methylene chloride containing solvent welding formulations. Such records shall be made available to the Executive Officer upon request.

(10)    The provisions of this rule shall not apply to regulated products, which weigh one pound or less, or consist of 16 fluid ounces or less and have VOC content limits in Section 94509(a) of the Consumer Products Regulation, unless they are:

(A)    Incorporated into or used exclusively in the manufacture or construction of the goods or commodities, and not exempted in paragraph (i)(2); or

(B)    Used in pollution-generating activities that take place at stationary sources, excluding maintenance and repair, and not exempted in paragraph (i)(2).

(11)    As of January 1, 2018, the provisions of subdivision (c)(I) and (g) shall not apply to any manufacturer or supplier of regulated products provided the product was sold to an independent distributor that was informed in writing, including electronic formats, by the manufacturer or supplier, that the regulated product is not to be used in the South Coast Air Quality Management District. Manufacturers utilizing this provision shall maintain notification letters for three (3) years, which shall be made available to the Executive Officer or designee upon request.

**1168 - 25**

SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT
21865 COPLEY DRIVE - DIAMOND BAR, CA 91765-4178

# NOTICE OF VIOLATION

DATE OF VIOLATION

4 / 30 / 2014

The Sherwin-Williams Company
**NAME**

101 W Prospect Ave          Cleveland, OH 44115
**MAILING ADDRESS**          **CITY**

VARIOUS LOCATIONS           157676
**LOCATION ADDRESS OF VIOLATION**    **I.D. #**

                            216 - 515 - 8694
**CITY**          **SECTOR**          **TELEPHONE #**

YOU ARE HEREBY NOTIFIED THAT A VIOLATION OF CALIFORNIA HEALTH AND SAFETY

CODE SECTION(S) _____

_____

AND/OR SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT RULE(S)

1168 (h)(1)

HAS BEEN COMMITTED. SUCH VIOLATIONS MAY BE PUNISHED BY THE IMPOSITION OF
THE CIVIL OR CRIMINAL PENALTIES PRESCRIBED BY ARTICLE 3, CHAPTER 4, PART 4,
DIVISION 26 (BEGINNING WITH SECTION 42400) OF THE CALIFORNIA HEALTH AND
SAFETY CODE. EACH DAY DURING WHICH THE VIOLATION OCCURS MAY BE PUNISHED
AS A SEPARATE VIOLATION WHETHER OR NOT A NOTICE OF VIOLATION IS ISSUED ON
EACH SUCH DAY.

## Description of Violation:

Offering for sale an adhesive and/or
sealant for use in the jurisdiction of
the SCAQMD that at the time of
sale exceeds the applicable VOC limits
specified in paragraphs (c)(1) and (c)(2)

_____

_____

_____

BY
Nicole Silva          TELEPHONE (909) 396-3384
**INSPECTOR**

                              Regulatory
SERVED TO: Barrett Cupp     TITLE: Affairs Director

SERVED BY: CERTIFIED MAIL     DATE 5 / 20 / 2015

## No. P 55313

OFFICE OF STATIONARY
SOURCE COMPLIANCE

ORIGINAL

**South Coast Air Quality Management District**
21865 COPLEY DRIVE, DIAMOND BAR, CA 91765-4178

**P 64805**

# NOTICE OF VIOLATION

discovery

| DATE OF VIOLATION | | |
|---|---|---|
| Month | Day | Year |
| 1 | 27 | 15 |

| Facility Name: | | Facility ID#: | Sector: |
|---|---|---|---|
| The Sherwin-Williams Co. | | 157676 | |

| Location Address: | City: | Zip: |
|---|---|---|
| Various locations in SCAQMD | | |

| Mailing Address: | City: | Zip: |
|---|---|---|
| 101 W Prospect Ave | Cleveland, OH | 44115 |

YOU ARE HEREBY NOTIFIED THAT YOU HAVE BEEN CITED FOR ONE OR MORE VIOLATIONS OF THE SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT (SCAQMD) RULES, STATE LAW OR FEDERAL LAW.  IF PROVEN, SUCH VIOLATION(S) MAY RESULT IN THE IMPOSITION OF CIVIL OR CRIMINAL PENALTIES.

EACH DAY A VIOLATION OCCURS MAY BE HANDLED AS A SEPARATE OFFENSE REGARDLESS OF WHETHER OR NOT ADDITIONAL NOTICES OF VIOLATION ARE ISSUED.

## DESCRIPTION OF VIOLATIONS

| # | Authority* | Code Section or Rule No. | SCAQMD Permit to Operate or CARB Registration No. | Condition No. (If Applicable) | Description of Violation |
|---|---|---|---|---|---|
| 1 | ☒SCAQMD ☐CH&SC ☐CCR ☐CFR | 1113 (c)(1)(A) | | —— | Selling architectural coatings with a VOC content in excess of the limits specified in the Table of Standards 1 |
| 2 | ☐SCAQMD ☐CH&SC ☐CCR ☐CFR | | | —— | |
| 3 | ☐SCAQMD ☐CH&SC ☐CCR ☐CFR | | | —— | |
| 4 | ☐SCAQMD ☐CH&SC ☐CCR ☐CFR | | | —— | |
| 5 | ☐SCAQMD ☐CH&SC ☐CCR ☐CFR | | | —— | |

| Served To: | Phone: | Served By: | | Date Notice Served: |
|---|---|---|---|---|
| Barrett Cupp | 216-515-8894 | Bradley McClurg | | 6/16/16 |
| Title: Director - Regulatory Affairs | Email: Barry.L.Cupp@ sherwin.com | Phone No: ☐ 909-396- ☐ 310-233- | Email: bmcclurg @ aqmd.gov | |

*Key to Authority Abbreviations:
SCAQMD – South Coast Air Quality Management District   CH&SC – California Health and Safety Code
CCR – California Code of Regulations   CFR – Code of Federal Regulations

Method of Service:
☐ In Person   ☒ Certified Mail

**ORIGINAL**



**South Coast Air Quality Management District**
21865 COPLEY DRIVE, DIAMOND BAR, CA 91765-4178

# NOTICE OF VIOLATION

**P 64808**

| DATE OF VIOLATION | | |
|---|---|---|
| Month | Day | Year |
| 1 | 1 | 15 |

| Fac'y Name | | |
|---|---|---|
| *The Sherwin Williams Co* | Fac Id'# **157676** | Sector |

| Location Address | City | Zip |
|---|---|---|
| *Various locations in SCAQMD* | | |

| If applicable: *101 W Prospect AV.* | City *Cleveland, OH* | Zip *44115* |

YOU ARE HEREBY NOTIFIED THAT YOU HAVE BEEN CITED FOR ONE OR MORE VIOLATIONS OF THE SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT (SCAQMD) RULES, STATE LAW OR FEDERAL LAW. IF PROVEN, SUCH VIOLATION(S) MAY RESULT IN THE IMPOSITION OF CIVIL OR CRIMINAL PENALTIES.

EACH DAY A VIOLATION OCCURS MAY BE HANDLED AS A SEPARATE OFFENSE REGARDLESS OF WHETHER OR NOT ADDITIONAL NOTICES OF VIOLATION ARE ISSUED.

## DESCRIPTION OF VIOLATIONS

| # | Authority* | Code Section or Rule No | SCAQMD Perm't to Operate or CARB Registration No | Condition No. (if Applicable) | Description of Violation |
|---|---|---|---|---|---|
| 1 | ☒SCAQMD ☒CH&SC ☐CCR ☐CFR | 1143(d)(1) 99509 (D)(4)(A) (D)(4)(B)(3) | | ___ ___ ___ ___ | *offering for sale and selling a multi-purpose solvent with a VoC content in excess of 25 grams per liter • Crown Pro Flush* |
| 2 | ☐SCAQMD ☐CH&SC ☐CCR ☐CFR | | | ___ | |
| 3 | ☐SCAQMD ☐CH&SC ☐CCR ☐CFR | | | ___ | |
| 4 | ☐SCAQMD ☐CH&SC ☐CCR ☐CFR | | | ___ | |
| 5 | ☐SCAQMD ☐CH&SC ☐CCR ☐CFR | | | ___ | |

| Served To: *Barrett Cupp* | Phone *216-515-8874* | Served By *Bradley McClung* | Date Notice Served *9/9/2016* |
|---|---|---|---|
| Title *Director - Regulatory Affairs* | Email *Barry.L.Cupp@ sherwin.com* | Phone No ☒ 909-396-2446 ☐ 310-233- | Email *bmcclung* @ aqmd.gov |

*Key to Authority Abbreviations:
SCAQMD – South Coast Air Quality Management District
CCR – California Code of Regulations
CH&SC – California Health and Safety Code
CFR – Code of Federal Regulations

Method of Service: ☐ In Person ☒ Certified Mail

**ORIGINAL**

# SPECIAL INVESTIGATIONS
## SERVICE OF PROCESS/MESSENGER/COURT FILING/RESEARCH REQUEST

Date: **11/30/18**_____ Due Date: **11/30/18**_____

Requesting Attorney/Secretary: **Bill Wong/Cindy B.**

### TYPE OF REQUEST

Service of Process ☐   Messenger ☐

Court Filing ☒   Research ☐

| INVESTIGATORS USE ONLY | |
|---|---|
| Date Assigned: | *11/30/18* |
| Assigned Investigator: | *C. Crawford* |
| Control No.: | *GC2018-01074* |
| Date Completed: | *11/30/18* |

## SPECIAL RESEARCH REQUEST
### NOV INFORMATION

Facility Name: _____

NOV No(s): _____  Date(s) of Violation(s): _____

Address: _____

| REQUESTED: | DESCRIPTION: | INVESTIGATORS USE ONLY COMPLETED |
|---|---|---|
| | Corporation/LLP/LC Information | |
| | Registered Agent for Service of Process Information | |
| | Corporate Officer Information | |
| | DBA Information (including county, if found) | |
| | Individual(s) Personal Information | |

Special Instructions/Additional Information (attach additional page, if necessary):

## COURT FILING INSTRUCTIONS/ COURT RESEARCH REQUEST

Case Name/Matter Name: **SCAQMD v Sherwin Williams**

Court Name: **LASC, East Judicial District, Pomona Courthouse**

Court Address: **400 Civic Center Plaza Pomona, CA 91766**

Conformed Copies:  Yes ☒   No ☐   Number: **2**___   Return To: **Bill Wong/Cindy Bustillos**

Documents to Be Filed/Served/Researched (attach additional page, if necessary):

Please file OG with the court, conform 2 copies

## PROCESS SERVICE/MESSENGER SERVICE REQUEST

Case Name/Matter Name: _____

Serve: _____

Service Address: _____

Last Day and Time to Serve: _____

Personal Service ☐   Substituted Service ☐   Delivery/Drop Serve ☐

Documents to be Served /Instructions (attach additional page, if necessary):

| INVESTIGATORS USE ONLY | |
|---|---|
| Person Served/Title: | |
| Location of Service: | |
| Date and Time of Service: | |

Created: 2/13/2013

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

# NOTICE OF VIOLATION

21865 CORLEY DRIVE - DIAMOND BAR, CA 91765-4178

DATE OF VIOLATION

NAME: The Sherwin-Williams Company

MAILING ADDRESS: 101 West Prospect    CITY: Cleveland, OH 44115

LOCATION-ADDRESS OF VIOLATION: Various Locations within SCAQMD    I.D. #: 157676

CITY:    SECTOR:    TELEPHONE #: (216) 515-8894

YOU ARE HEREBY NOTIFIED THAT A VIOLATION OF CALIFORNIA HEALTH AND SAFETY CODE SECTION(S)

AND/OR SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT RULE(S)

Rule 1113 (c)(1)(A)

HAS BEEN COMMITTED. SUCH VIOLATIONS MAY BE PUNISHED BY THE IMPOSITION OF THE CIVIL OR CRIMINAL PENALTIES PRESCRIBED BY ARTICLE 3, CHAPTER 4, PART 4, DIVISION 26 (BEGINNING WITH SECTION 42400) OF THE CALIFORNIA HEALTH AND SAFETY CODE. EACH DAY DURING WHICH THE VIOLATION OCCURS MAY BE PUNISHED AS A SEPARATE VIOLATION WHETHER OR NOT A NOTICE OF VIOLATION IS ISSUED ON EACH SUCH DAY.

## Description of Violation: Selling architectural

coatings within the SCAQMD with a Voc content in excess of the limits listed in the Rule 1113 - Table of standards 1 for the years: 2008, 2009, 2010, 2011, 2012, and 2013.

BY: Brittney C. Gallivan
INSPECTOR

TELEPHONE ( 909 ) 396-2792

SERVED TO: Barrett Cupp
(via U.S.P.S. certified mail)
6/11/15 1E:

TITLE: Director of Regulatory Affairs

SERVED BY: Brittney Gallivan    DATE: 03 / 18 / 2015

No. P 61803

OFFICE OF ENGINEERING AND COMPLIANCE

ORIGINAL

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

**COURTHOUSE ADDRESS:**
Pomona Courthouse South
400 Civic Center Plaza, Pomona, CA 91766

**PLAINTIFF:**
People of The State of California, ex rel South Coast Air Quality Ma

**DEFENDANT:**
the Sherwin-Williams Company, a an Ohio Corporation

### NOTICE OF CASE MANAGEMENT CONFERENCE

**FILED**
Superior Court of California
County of Los Angeles

**12/05/2018**

Sherri R. Carter, Executive Officer / Clerk of Court
By: _____ **Londie Olmos** _____ Deputy

**CASE NUMBER:**
18PSCV00136

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 04/24/2019 | Time: 8:30 AM | Dept.: O |
|---|---|---|

**NOTICE TO DEFENDANT:** THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: ____12/05/2018____

Peter A. Hernandez

Judicial Officer

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in __Pomona_____, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

William Bullitt Wong
21865 E Copley Dr
Diamond Bar, CA 91765

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: __12/05/2018_____

By __Londie Olmos_____
Deputy Clerk

LACIV 132 (Rev. 07/13)
LASC Approved 10-03
For Optional Use

**NOTICE OF**
**CASE MANAGEMENT CONFERENCE**

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter Three